KEITH E. EGGLETON, State Bar No. 159842
RODNEY G. STRICKLAND, State Bar No. 161934
ANTHONY J WEIBELL, State Bar No. 238850
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: keggleton@wsgr.com;
rstrickland@wsgr.com; aweibell@wsgr.com

Attorneys for Defendant
RUDOLPH TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEHRDAD NIKOONAHAD, | CASE NO.: C 08-2290 JF |
| Plaintiff, | **RUDOLPH TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS** |
| v. | |
| RUDOLPH TECHNOLOGIES, INC. and DOES 1-25, inclusive, | Date: July 25, 2008 |
| | Time: 9:00 AM |
| Defendants. | Dept: 3 |
| | Judge: Hon. Jeremy Fogel |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

STATEMENT OF ISSUES ....................................................................................................1

INTRODUCTION....................................................................................................................1

STATEMENT OF FACTS.......................................................................................................2

ARGUMENT ...........................................................................................................................5

I.      LEGAL STANDARD ..................................................................................................5

II.     THE FIRST CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE
        PLAINTIFF HAS FAILED TO PLEAD A BREACH OF CONTRACT...........................6

III.    THE SECOND CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE
        PLAINTIFF HAS FAILED TO PLEAD A BREACH OF THE IMPLIED
        COVENANT...........................................................................................................12

        1.      The Complaint Relies Upon an Incorrect Definition of the Implied
                Covenant of Good Faith and Fair Dealing. .................................................12

        2.      The Alleged Implied Obligations Are Redundant of the Breach of
                Contract Claim and/or Inconsistent with the Express Terms of the
                Agreement. .........................................................................................13

        3.      The Complaint Fails to Allege any Facts to Support a Conclusion
                that Rudolph Acted with Ill Motive and Absent Any Legitimate
                Purpose. .............................................................................................16

IV.     THE THIRD CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE
        PLAINTIFF HAS FAILED TO PLEAD A BREACH OF A FIDUCIARY DUTY
        OR DAMAGES.......................................................................................................17

V.      THE FOURTH CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE
        PLAINTIFF HAS FAILED TO PLEAD PROMISSORY FRAUD. ...............................20

        1.      The Complaint Fails to Allege Sufficient Facts to Support the
                Conclusory Allegation of Rudolph's Intent to Perform. ..........................20

        2.      The Promises Alleged in the Complaint are Inconsistent with the
                Parties' Written Integrated Agreement. .....................................................22

CONCLUSION ......................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*389 Orange St. Partners v. Arnold*, 179 F.3d 656 (9th Cir. 1999)...................................... 6

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226,
  244 (2007) ...................................................................................................................... 17

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988) .................................... 5

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ...................................................... 11

*Boracchia v. Biomet, Inc.*, No. C-07-0650 MMC, 2008 WL 512721 (N.D. Cal.
  Feb. 25, 2008) ................................................................................................................ 6

*Brunswick Hills Racquet Club, Inc., v. Route 18 Shopping Ctr. Assocs., LLP*, 864
  A.2d 387 (N.J. 2005)................................................................................................. 13, 16

*Cambridge Mgmt. Group, LLC v. Robert A. Kosseff & Assocs., P.C.*, No. 05-3402
  JAP, 2007 WL 2084895 (D.N.J. July 18, 2007) ........................................................ 13

*Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336 (2004) ............................................... 23

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, __ Cal. Rptr. 3d __, 2008 WL
  1820916 (Cal. Apr. 24, 2008) ..................................................................................... 17

*Comerica Bank v. McDonald*, No. 06-03735 RMW, 2006 WL 3365599 (N.D. Cal.
  Nov. 17, 2006).............................................................................................................. 21

*Conrad v. Bank of Am.*, 45 Cal. App. 4th 133 (1996) ................................................... 21

*Dozier v. Maispace*, No. 05-1761 PVT, 2007 WL 518622 (N.D. Cal. Feb. 13,
  2007) ............................................................................................................................. 21

*Eastern Elec., Inc. v. Seeburg Corp.*, 427 F.2d 23 (2d Cir. 1970) ................................. 9

*Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159 (3d Cir. 2001) ................... 9, 12

*Gorrie v. Winters*, 518 A.2d 515 (N.J. Super Ct. App. Div. 1986).................................. 7

*Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615 (N.D. Cal. 2002) ........................................ 20, 21

*Johnson v. Riverside Healthcare Sys., LP*, 516 F.3d 759 (9th Cir. 2008)........................ 5

*Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996 (D.N.J. 1996) ................................... 13

*Kas Oriental Rugs, Inc. v. Ellman*, 926 A.2d 387 (N.J. Super Ct. App. Div. 2007)................. 9, 13

*Locke v. Warner Bros., Inc.*, 57 Cal. App. 4th 354 (1997) .......................................... 20

*Lopez v. GMAC Mortgage Corp.*, No. C 07-3911 CW, 2007 WL 3232448 (N.D.
  Cal. Nov. 1, 2007).......................................................................................................... 5

*Magpali v. Farmers Group, Inc.*, 48 Cal. App. 4th 471 (1996) ................................ 21, 22

*McKelvey v. Pierce*, 800 A.2d 840 (N.J. 2002) ................................................................ 17

*Medimatch, Inc. v. Lucent Techs. Inc.*, 120 F. Supp. 2d 842 (N.D. Cal. Oct. 24, 2000) ...................................................................................................................... 5

*Mieuli v. DeBartolo*, No. C-00-3225 JCS, 2001 WL 777447 (N.D. Cal. Jan. 16, 2001) ...................................................................................................................... 6

*Murphy v. Implicito*, 920 A.2d 678 (N.J. Super Ct. App. Div. 2007) ........................... 6

*Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459 (1992) .............................. 6, 17

*Palladin Partners v. Gaon*, No. 05-3305 WJM, 2006 WL 2460650 (D.N.J. Aug. 22, 2006) ............................................................................................................ 17, 20

*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995) ......................... 5

*Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194 (E.D.N.Y. 2007) ............. 19

*Permanence Corp. v. Kennametal, Inc.*, 908 F.2d 98 (6th Cir. 1990) ....................... 10

*Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949 (2005)................... 21

*Seidenberg v. Summit Bank*, 791 A.2d 1068 (N.J. Super Ct. App. Div. 2002) ........... 13

*Shapiro v. Barnea*, No. 06-811 JBS, 2006 WL 3780647 (D.N.J. Dec. 21, 2006) ........ 20

*Shurpin v. Elmhirst*, 148 Cal. App. 3d 94 (1983)...................................................... 20

*Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799 (1990)............................... 23

*Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575 (N.J. 1997)........................ 12, 13

*Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153 (1991)................. 21

*Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18 (1985) .................................................. 21, 22

*The Paul Revere Life Ins. Co. v. Fink*, No. 07-CV-1648, 2007 WL 3430511 (D.N.J. Nov. 14, 2007) ................................................................................................ 6

*Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798 (1995)................................... 9

*Tiedemann v. Cozine*, 688 A.2d 1056 (N.J. Super Ct. App. Div. 1997) ...................... 7

*Triple Point Tech., Inc. v. D.N.L. Risk Mgmt., Inc.*, No. 99-4888 WHW, 2000 WL 1236227 (D.N.J. Apr. 11, 2000)............................................................................ 9, 10

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................... 5

*Wade v. Kessler Inst.*, 798 A.2d 1251 (N.J. 2002) ................................................... 16

*Walnut Creek Pipe Distribs., Inc. v. Gates Rubber Co. Sales Div., Inc.*, 228 Cal. App. 2d 810 (1964) ...................................................................................................... 9

1    *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324 (1986) ................................ 21

2    *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121 (N.J. 2001) ..................................................... 13, 16

3    *Wolf v. Superior Court*, 107 Cal. App. 4th 25 (2003) ............................................................ 12, 17

4    **STATUTES**

5    35 U.S.C. § 133 ................................................................................................................. 18

6    **FEDERAL RULES**

7    Fed. R. Civ. P. 12(b)(6) .................................................................................................... 1, 5

8    Fed. R. Civ. P. 8(a) ........................................................................................................... 22

9    Fed. R. Civ. P. 9(b) ................................................................................................. 1, 5, 21, 22

10    **FEDERAL REGULATIONS**

11    37 C.F.R. § 1.111 ............................................................................................................... 19

12    37 C.F.R. § 1.112 ............................................................................................................... 19

13    37 C.F.R. § 1.134 ............................................................................................................... 18

14    37 C.F.R. § 1.136 ............................................................................................................... 18

15    37 C.F.R. § 1.31 ................................................................................................................ 18

16    37 C.F.R. § 1.32 ................................................................................................................ 18

17    **MISCELLANEOUS**

18    U.S. Patent and Trademark Office, General Information Concerning Patents, *available at*
19      http://www.uspto.gov/web/offices/pac/doc/general/index.html#office ....................................... 19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on July 25, 2008, at 9:00 a.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Jeremy Fogel, United States District Court, Northern District of California, San Jose Division, Courtroom 3, 5th Floor, 280 South First Street, San Jose, California 95113, defendant Rudolph Technologies, Inc. ("Rudolph") will, and hereby does, move the Court for an order dismissing all claims asserted in the Complaint ("Compl.") filed by plaintiff Mehrdad Nikoonahad ("Plaintiff").  This motion is made pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and Fed. R. Civ. P. 9(b) for failure to plead circumstances of fraud with requisite particularity.  The motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, all pleadings and papers on file in this action, oral argument of counsel, and any other matter which may be submitted at the hearing.

**STATEMENT OF ISSUES**

1.      Does the Complaint fail to plead a claim for breach of contract?

2.      Does the Complaint fail to plead a claim for breach of the implied covenant of good faith and fair dealing?

3.      Does the Complaint fail to plead a claim for breach of a fiduciary duty?

4.      Does the Complaint fail to plead a claim for promissory fraud and further fail to satisfy the heightened pleading requirements for a fraud claim?

**INTRODUCTION**

This lawsuit arises from a contract between the parties pursuant to which Rudolph paid $100,000 for a license to use, test, and develop for a period of eighteen months certain technology owned by Plaintiff.  The contract also gave Rudolph an option to buy Plaintiff's technology during the eighteen-month evaluation period.  Rudolph did not exercise its option to purchase the technology.

The eighteen-month license and option to purchase expired in March 2008.  Nine days later, Plaintiff brought this lawsuit against Rudolph for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of a fiduciary duty, and promissory fraud.

Plaintiff's claims are all based upon the underlying allegation that Rudolph failed to develop products using Plaintiff's technology. The agreement, however, imposed no such obligation.

Each of the claims of the Complaint should be dismissed because the Complaint fails to allege sufficient facts to support a cognizable legal theory. The breach of contract claim should be dismissed because the acts and omissions alleged in the Complaint do not constitute a breach of the parties' agreement. The implied covenant claim should be dismissed because, among other reasons, this claim is redundant of the breach of contract claim and the alleged implied terms contradict the express terms of the parties' agreement. The fiduciary duty claim should be dismissed because the Complaint fails to allege any conduct that would constitute a breach of the fiduciary duty and further fails to establish that Plaintiff has suffered any damages. Lastly, the promissory fraud claim should be dismissed because the Complaint fails to allege any facts to support the conclusory allegation that Rudolph did not intend to perform its promises and, in any event, the promises alleged as the basis of this claim are inconsistent with the parties' integrated written contract.

## STATEMENT OF FACTS

### Parties

Founded in 1940, defendant Rudolph Technologies, Inc. is a Delaware corporation with headquarters in Flanders, New Jersey. Rudolph designs, develops, manufactures and supports high-performance equipment used by semiconductor device manufacturers around the world. Rudolph's proprietary systems measure the thickness and other properties of thin films applied during various steps in the manufacture of integrated circuits.

Plaintiff Merhdad Nikoonahad provided consulting services to Rudolph at various times during the years 2005 through 2007. Compl. ¶¶ 5-7. During that time, Plaintiff owned the rights to U.S. Patent No. 6,867,862, U.S. Patent Application No. 60/641,979, and International PCT Publication No. WO 2004/046655 A3 (hereinafter "the licensed technology"), all of which involve techniques for measuring defects in silicon wafers. *Id.* ¶ 2.

**The Agreement**

On September 12, 2006, Rudolph and Plaintiff entered into an Exclusive Patent License and Assignment Agreement ("the Agreement"). *Id.* ¶ 8. [1] Under the terms of the Agreement, Rudolph agreed to pay Plaintiff "a one-time fee" of $100,000, Agmt. ¶ 5.1.1, in exchange for

- an "Initial Development License" granting Rudolph the "right and license to develop, test, manufacture, have manufactured for Licensee, use, sell, or offer for sale" the licensed technology "for a period of eighteen (18) months from the effective date of this Agreement," *id.* ¶ 2.1; and

- a "First Option" granting Rudolph the option to purchase and acquire the licensed technology for a fee of $600,000, which option expired "eighteen (18) months from the effective date of this Agreement," *id.* ¶ 3.1.

As the foregoing reflects, the express purpose of the Agreement was to give Rudolph eighteen months to evaluate the licensed technology to determine whether Rudolph wanted to acquire it. If, after paying the one-time fee of $100,000, Rudolph decided not to exercise the First Option by the end of the eighteen-month period, the First Option and the Initial Development License would terminate. *Id.* ¶ 7.1. Rudolph would owe no royalties to Plaintiff at that point so long as it had not sold any products incorporating Plaintiff's patented technology during the eighteen-month evaluation period. *Id.* ¶ 10.1. (The Complaint does not allege that any such products were sold during the eighteen-month evaluation period.) On the other hand, if Rudolph exercised the First Option during the eighteen-month evaluation period, it would be required to pay an additional one-time fee of $600,000. *Id.* ¶ 5.2.1.

The Agreement also imposed certain affirmative obligations on Plaintiff with respect to consulting services and inventions conceived after the effective date of the Agreement. Plaintiff was required "to perform *up to* Five Hundred Twenty (520) hours of consulting services," which hours were chargeable to Rudolph at a rate of $225 per hour. *Id.* ¶ 4.1.2 (emphasis added). Plaintiff was also required to disclose to Rudolph "all of his inventions that are reasonably

---

[1] Plaintiff attached the Agreement to his Complaint as "Exhibit A" and incorporated it therein by reference. Compl. ¶ 8 ("A true copy of the Agreement is attached as Exhibit A and incorporated by reference."). Hereinafter, citations to the Agreement attached to the Complaint are abbreviated "Agmt."

related to the Licensed Subject Matter," *id.* ¶ 4.2.1, as well as to file and inform Rudolph of "provisional patent applications" for any new "[i]nventions conceived" by Plaintiff during the term of the Agreement, *id.* ¶ 4.2.2.

Additionally, if Plaintiff conceived of any new inventions during the term of the Agreement, he was required to grant Rudolph a "Second Option" to add these inventions to the licensed subject matter and to purchase these inventions as part of the First Option. *See id.* ¶ 4.2.3. The term of the Second Option would be nine months from the date any new inventions were disclosed to Rudolph by Plaintiff. *Id.* ¶ 4.2.3.1. If Rudolph exercised the Second Option during the nine-month period, further obligations for both parties would be triggered. *See id.* ¶¶ 4.2.6 (Plaintiff would be obligated to convey ownership of new inventions to Rudolph), 4.2.7 (Rudolph would be obligated to pay the expenses of prosecuting patents for Plaintiff's new inventions). However, if Rudolph did not exercise the Second Option, then it had no additional obligations to Plaintiff other than to abide by its confidentiality obligations. *Id.* ¶ 4.2.9.

At no point in the Agreement, regardless of the options exercised by Rudolph, did Rudolph agree to (a) utilize Plaintiff's consulting services for a minimum number of hours (as opposed to the 520-hour maximum obligation agreed to by Plaintiff); (b) develop and market products incorporating the licensed technology; (c) communicate with Plaintiff concerning the development of products; or (d) refrain from using Plaintiff's consulting services to develop non-royalty-bearing products.

On March 12, 2008, the eighteen-month term of the license expired without Rudolph exercising either the First Option or the Second Option,[2] or producing any royalty-bearing products.

### Background of Motion

On March 21, 2008, just over one week after the license expired, Plaintiff filed this lawsuit in the Superior Court of the State of California, County of Santa Clara, alleging claims

---

[2] The Complaint does not allege whether the nine-month evaluation period for the Second Option was ever triggered.

1   for (1) Breach of Written Contract; (2) Breach of Implied Covenant of Good Faith and Fair

2   Dealing; (3) Breach of Fiduciary Duty; and (4) Promissory Fraud.  The crux of the Complaint is

3   that the Agreement allegedly obligated Rudolph to develop and market products incorporating

4   the licensed technology, and that Rudolph disregarded this obligation by allowing the Agreement

5   to expire without developing any such products -- eliminating the possibility of future royalties

6   for Plaintiff.  *See* Compl. ¶¶ 11, 16, 29.

7        On May 2, 2008, Rudolph removed the action to this Court, pursuant to the Court's

8   removal and diversity jurisdiction under 28 U.S.C. Sections 1441 and 1332.  This motion to

9   dismiss is the first responsive pleading filed by Rudolph since Plaintiff initiated this action in the

10  California Superior Court.

11                                    **ARGUMENT**

12  **I.    LEGAL STANDARD**

13       "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory'

14  or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Johnson v.*

15  *Riverside Healthcare Sys., LP*, 516 F.3d 759, 763 (9th Cir. 2008) (*quoting Balistreri v. Pacifica*

16  *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  In deciding Rudolph's Motion to Dismiss

17  under Rule 12(b)(6), the Court may consider the allegations in Plaintiff's Complaint and the

18  contents of the Agreement that Plaintiff has attached to his Complaint and incorporated therein

19  by reference.  *Medimatch, Inc. v. Lucent Techs. Inc.*, 120 F. Supp. 2d 842, 847 (N.D. Cal. Oct.

20  24, 2000) (*citing Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)).

21  Dismissal under Rule 9(b) for failure to plead with particularity "is the functional equivalent of a

22  motion to dismiss under Rule 12(b)(6) for failure to state a claim" and is treated in the same

23  manner. [3]  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

24

25

─────────────────

26       [3] "In a case that has been removed to federal court, the pleading requirements for a claim of
    fraud are analyzed under Federal Rule of Civil Procedure 9(b)."  *Lopez v. GMAC Mortgage*
27  *Corp.*, No. C 07-3911 CW, 2007 WL 3232448, at *4-5 (N.D. Cal. Nov. 1, 2007) (dismissing
    fraud claim removed to federal court for failure to meet Rule 9(b) pleading standard).
28

1    **II.    THE FIRST CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD A BREACH OF CONTRACT.**

2

3    "To establish a breach of contract claim, a plaintiff has the burden to show that the parties

4    entered into a valid contract, that the defendant failed to perform his obligations under the

5    contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 920 A.2d 678,

6    689 (N.J. Super Ct. App. Div. 2007).[4]  A breach of contract claim should be dismissed where the

7    acts and/or omissions alleged in the complaint do not amount to a breach of contract.  *See The*

8    *Paul Revere Life Ins. Co. v. Fink*, No. 07-CV-1648, 2007 WL 3430511, at *3 (D.N.J. Nov. 14,

9    2007) (dismissing breach of contract claim where alleged acts and omissions did not constitute a

10   breach of parties' contract); *see also Mieuli v. DeBartolo*, No. C-00-3225 JCS, 2001 WL

11   777447, at *5 (N.D. Cal. Jan. 16, 2001) ("Applying these rules, courts have granted motions to

12   dismiss on contract claims where it is clear from the unambiguous terms of the contract that the

13   alleged conduct by the defendant does not constitute a breach of contract.").

14   Here, Plaintiff's breach of contract cause of action is based upon the general allegation

15   that Rudolph "continuously failed to perform its obligations" and "delayed and frustrated the

16   contract objective of developing product."  Compl. ¶ 11.  To support these general allegations,

17   Plaintiff specifically alleges that Rudolph:

18       1.    "failed to conclude its due diligence investigation and make the first installment
        payment to Nikoonahad in a timely manner" and "failed to pay the second
19       installment to Nikoonahad in a timely manner"

20       2.    "failed to engage or utilize Nikoonahad's consulting services for developing
        products incorporating the licensed technology"

21

22      [4] Because the Court's jurisdiction over this action is based upon diversity, the conflict laws of
        the forum state, California, will determine which state's substantive law will govern Plaintiff's

23   claims.  *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999).  Under California
        conflict laws, "a contract's choice of law provision will identify what state's substantive law . . .

24   will be applied" to contract-based claims.  *Boracchia v. Biomet, Inc.*, No. C-07-0650 MMC,
        2008 WL 512721, at *3 (N.D. Cal. Feb. 25, 2008).  Thus, New Jersey law should be applied to

25   Plaintiff's breach of contract and implied covenant claims because the Agreement has a choice of
        law clause providing that it "shall be construed according to the laws of the State of New Jersey

26   and the United States of America,"  Agmt. ¶ 19.1; *see also Nedlloyd Lines B.V. v. Superior
        Court*, 3 Cal. 4th 459, 463, 468-470 (1992) (contractual provision that "agreement shall be

27   governed by and construed in accordance with Hong Kong law" was broad enough to encompass
        claims for breach of contract and breach of the implied covenant of good faith and fair dealing).

28

3. "failed to communicate with, or provide information to Nikoonahad concerning the development of products and the prosecution of his patent application"

*Id.* Plaintiff further alleges on information and belief that Rudolph:

4. "failed to use reasonable efforts to develop products incorporating the licensed technology"

5. "used Nikoonahad's disclosures and consulting services for the purpose of developing products that would not require the payment of royalties"

6. "terminated the license but retained the subject intellectual property for its own benefit while depriving Nikoonahad of said intellectual property and the benefits of the contract"

*Id.* None of these six acts, even if taken as true for purposes of this motion, would constitute a breach of the Agreement. [5]

First, the vague allegation that Rudolph failed to make the installment payments to Plaintiff "in a timely manner" cannot be the basis for Plaintiff's breach of contract claim because the Complaint fails to allege that time was of the essence with respect to these payments, and in fact the Agreement contains no such provision. *Gorrie v. Winters*, 518 A.2d 515, 517-518 (N.J. Super Ct. App. Div. 1986); *Tiedemann v. Cozine*, 688 A.2d 1056, 1058 (N.J. Super Ct. App. Div. 1997) ("There is nothing in the record to support a finding that time was of the essence. That finding would require that there be a writing stating that time was of the essence and that the time allowed be reasonable and specific."). Moreover, the Complaint fails to allege any damages from the alleged untimely installment payments. Plaintiff does not dispute that he was paid the full amount owed to him under the Agreement.

Second, a failure "to engage or utilize Nikoonahad's consulting services for developing products incorporating the licensed technology" could not have been a breach of the Agreement

---

[5] The Complaint also alleges that Rudolph breached the Agreement when it allegedly "refused to perform the dispute resolution provision" by declining Plaintiff's request to mediate. Compl. ¶ 11; Agmt. ¶ 20.1 ("If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation . . . ."). Because the Complaint does not allege all of the relevant facts concerning this claim, including Rudolph's recent offer to mediate, Rudolph does not move to dismiss the breach of contract claim as to this single issue. Instead, Rudolph anticipates that it will file a motion for summary judgment on this remaining contract issue.

because *the Agreement imposes no obligation on Rudolph to utilize Plaintiff's consulting services*.  The Agreement merely imposed upon *Plaintiff* the obligation to provide a maximum of "*up to* Five Hundred Twenty (520) hours of consulting services."  Agmt. ¶ 4.1.2 (emphasis added).  Under no circumstances did the Agreement require Rudolph to employ Plaintiff for a minimum number of hours.  *Id.*

Third, a failure "to communicate with, or provide information to Nikoonahad concerning the development of products and the prosecution of his patent application" could not have been a breach of the Agreement because *the Agreement imposes no obligation on Rudolph to communicate with Plaintiff regarding the development of products or the prosecution of his patent application*.  Not surprisingly, the Complaint fails to identify any provision of the Agreement imposing upon Rudolph this alleged obligation.

Fourth, a failure "to use reasonable efforts to develop products incorporating the licensed technology" could not have been a breach of the Agreement because *the Agreement imposes no obligation on Rudolph to use reasonable efforts to develop products incorporating the licensed technology, or even to make any effort at all to develop products incorporating the licensed technology*.  Once again, the Complaint fails to identify any provision of the Agreement imposing upon Rudolph the obligation alleged to have been breached.  Indeed, such a provision would have been contrary to the express purpose of the Agreement.  The Agreement is not a development contract.  Under the express terms of the Agreement, the purpose of the Initial Development License (for which Rudolph paid $100,000) was to grant Rudolph the "right" – not the obligation – "to develop, test, manufacture, have manufactured for Licensee, use, sell, or offer for sale" the licensed technology during the eighteen-month evaluation period.  Agmt. ¶ 2.1.  Nowhere did the Agreement obligate Rudolph to develop anything.  In fact, the Agreement expressly contemplated the likelihood that Rudolph might never develop or produce any products incorporating that technology.  *See id.* ¶ 10.1 ("Where no Products or Processes sold by the Licensee are covered by any claims of the IP Rights, no royalties will be due . . .").  The Agreement also expressly contemplated the possibility that Rudolph would choose not to exercise its "option" to purchase the licensed technology.  *See, e.g., id.* ¶¶ 3.1 (purchase of

1   technology was optional), 4.2.9 (Rudolph to maintain confidentiality "in the event that [it] does

2   not exercise" its options), 7.1 (First Option to acquire licensed technology would expire eighteen

3   months after effective date).

4          Because the Agreement does not contain (and the Complaint does not cite) an express

5   term requiring Rudolph "to use reasonable efforts to develop products incorporating the licensed

6   technology," Plaintiff must be suggesting that the Court should imply such a term.  The Court

7   should not do so, however, because the above-quoted language of the Agreement demonstrates

8   that such a term would be inconsistent with the express terms of the Agreement.  *Kas Oriental*

9   *Rugs, Inc. v. Ellman*, 926 A.2d 387, 393 (N.J. Super Ct. App. Div. 2007) ("The law continues to

10  prohibit the enforcement of an implied contract or an implied provision that conflicts or is

11  inconsistent with the parties' express contract").  Moreover, courts only imply an obligation to

12  use "reasonable efforts" or "best efforts" to develop royalty-bearing products where an exclusive

13  patent license provides no compensation to the licensor other than the mere possibility of future

14  royalties.  *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 167 (3d Cir. 2001)

15  (exclusive license governed by New Jersey law did not contain implied obligation to use

16  "reasonable efforts" to market technology where licensor received "some assurance of benefit

17  arising from the license independent of the efforts of the licensee"); *Triple Point Tech., Inc. v.*

18  *D.N.L. Risk Mgmt., Inc.*, No. 99-4888 WHW, 2000 WL 1236227, at *3 (D.N.J. Apr. 11, 2000)

19  ("courts will imply an obligation to use 'best efforts' to market products under an exclusive

20  licensing agreement *only if, in the absence of such a duty, 'the contract at issue would lack*

21  *mutuality of obligation and be inequitable'*") (*quoting Eastern Elec., Inc. v. Seeburg Corp.*, 427

22  F.2d 23, 25 (2d Cir. 1970) (emphasis added)). [6]  "When, however, purchasers bargain for

23

24        [6] California law also recognizes that a "reasonable efforts" or "best efforts" term should not
     be implied where the exclusive licensee has expressly agreed to provide consideration
25   independent of future royalties.  *See, e.g.*, *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798,
     805 (1995) (recognizing that courts will imply an obligation to use "'best efforts' to generate
26   profits for the licensor" in an exclusive licensing and royalty agreement only where "*the licensee*
     *does not expressly promise to do anything*") (emphasis added); *see also Walnut Creek Pipe*
27   *Distribs., Inc. v. Gates Rubber Co. Sales Div., Inc.*, 228 Cal. App. 2d 810, 815 (1964) (" The law
     refuses to read into contracts anything by way of implication except upon grounds of obvious
28   necessity.").

1   consideration apart from scheduled royalty payments, courts will not imply a 'best efforts'

2   obligation." *Triple Point*, 2000 WL 1236227, at *3-4 (dismissing "best efforts" claim where

3   intellectual property owners had "already received some payment for their intellectual property

4   apart from any future royalty payments"); *see also Permanence Corp. v. Kennametal, Inc.*, 908

5   F.2d 98, 101-102 (6th Cir. 1990) (declining to imply obligation to use "best efforts" in exploit

6   exclusive patent license agreement where licensee agreed to pay upfront flat fee in addition to

7   future royalties).  Here, a "reasonable efforts" or "best efforts" term should not be implied

8   because Plaintiff was guaranteed to (and did) receive at least the flat fee of $100,000 -- even if

9   Rudolph made no effort at all to exploit the licensed technology.  Agmt. ¶ 2.1.

10          Fifth, Rudolph's alleged use of "Nikoonahad's disclosures and consulting services for the

11  purpose of developing products that would not require the payment of royalties under the

12  Agreement" could not have been a breach of the Agreement because the Agreement imposes no

13  obligation on Rudolph to use Nikoonahad's disclosures and services solely for the purpose of

14  developing royalty-bearing products.  Not only does the Complaint fail to identify any provision

15  in the Agreement imposing this obligation on Rudolph, in fact the actual terms of the Agreement

16  expressly contradict this allegation by recognizing that Rudolph could develop non-royalty-

17  bearing products.  *See* Agmt. ¶ 10.1 ("Where no Products or Processes sold by the Licensee are

18  covered by any claims of the IP Rights, no royalties will be due . . .").  Indeed, nowhere in the

19  section of the Agreement outlining the scope of Plaintiff's consulting services (or anywhere else)

20  did Plaintiff restrict the scope of his services to royalty-bearing products.  *See id.* ¶ 4.1.1.  To the

21  contrary, Plaintiff expressly agreed to provide consulting services for a large scope of existing

22  and future products not limited to products incorporating Plaintiff's patented technology.

23  *Compare id.* ¶ 4.1.1 (Plaintiff agreed to provide consulting services relating to "next-generation

24  OCD metrology products," "multi-azimuth OCD products," "current and next-generation OCD

25  products and technologies," and "OCD modeling") *with id.*, Ex. A (listing narrow extent of

26  Plaintiff's patented technology licensed under the Agreement).

27          Sixth, the allegation that Rudolph "terminated the license but retained the subject

28  intellectual property for its own benefit while depriving Nikoonahad of said intellectual property

1   and the benefits of the contract" is both contradicted by the terms of the Agreement and also too

2   speculative to withstand a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955,

3   1965 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative

4   level."). Rudolph did not (and could not absent a breach by Plaintiff) unilaterally terminate the

5   Agreement; rather the eighteen-month term of the license and First Option expired on March 12,

6   2008 according to the Agreement's express terms. *See* Agmt. ¶¶ 2.1 (license granted "for a

7   period of eighteen (18) months"), 7.1 (license and First Option "shall terminate eighteen (18)

8   months from the effective date").

9           Further, the only obligation imposed by the Agreement following a refusal by Rudolph to

10  exercise its options with respect to Plaintiff's intellectual property is that Rudolph abide by its

11  obligations under the parties' confidentiality agreement. *See* Agmt. ¶ 4.2.9. The Complaint does

12  not allege that Rudolph breached the terms of the parties' confidentiality agreement. Nor does

13  the Complaint allege what "benefits" allegedly have been denied to Plaintiff by Rudolph's

14  knowledge of the intellectual property that Plaintiff disclosed to Rudolph, how Rudolph

15  "deprived" Plaintiff of Plaintiff's own intellectual property, or that Rudolph has developed or

16  sold any products incorporating Plaintiff's technology. Moreover, the Complaint is vague in its

17  use of the term "retained the subject intellectual property" because it fails to allege how

18  intangible intellectual property can be "retained." Surely the parties did not expect Rudolph to

19  purge itself of all knowledge of Plaintiff's intellectual property following termination of the

20  license (assuming it were even possible to purge knowledge of intellectual property from the

21  minds of Rudolph employees). Thus, the allegation that Rudolph has "retained the subject

22  intellectual property for its own benefit while depriving Nikoonahad of said intellectual property

23  and the benefits of the contract" is unsupported by any factual allegations and too speculative to

24  survive this motion.

25          For the foregoing reasons, the breach of contract claim should be dismissed.

26

27

28

III.    **THE SECOND CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD A BREACH OF THE IMPLIED COVENANT.**

The breach of implied covenant claim should be dismissed because (1) this claim is based upon an incorrect definition of the implied covenant of good faith and fair dealing; (2) the alleged conduct underlying the implied covenant claim is redundant of the breach of contract claim and/or inconsistent with the Agreement's express terms; and (3) the Complaint fails to allege facts sufficient to support an allegation that Rudolph acted with ill motive and absent a legitimate purpose.

1.    **The Complaint Relies Upon an Incorrect Definition of the Implied Covenant of Good Faith and Fair Dealing.**

As an initial matter, Plaintiff's implied covenant claim should be dismissed because it is based upon an implied covenant that does not exist under New Jersey (or California) law:  the alleged "implied covenant of good faith and fair dealing that required each party to use his/its *best efforts* to perform the Agreement."  Compl. ¶ 15 (emphasis added).  Under New Jersey law, the covenant of good faith and fair dealing implied in every contract has nothing to do with "best efforts," and no New Jersey court has ever attached the high standard of affirmative "best efforts" to the implied covenant of good faith and fair dealing.  Rather, the implied covenant under New Jersey -- and California -- law merely obligates the parties to refrain from doing "'anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  *Emerson Radio*, 253 F.3d at 167 (*quoting Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997)); *see also Wolf v. Superior Court*, 107 Cal. App. 4th 25, 31 (2003) ("every contract contains an implied covenant of good faith and fair dealing, obligating the contracting parties to refrain from doing anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract") (internal quotations omitted).  This standard is clearly much different than the "best efforts" standard upon which Plaintiff purports to base his Second Cause of Action.

Not only are "best efforts" not a part of the standard covenant of good faith and fair dealing implied in every contract, "best efforts" (and even "reasonable efforts") cannot be

1   implied here because, as discussed above, Plaintiff received compensation under the terms of the

2   Agreement independent of the "efforts" of Rudolph.  Agmt. ¶ 5.1.1 (describing Plaintiff's

3   guaranteed $100,000 payment); *see supra* Section II at 9-10 (citing cases).  Thus, the alleged

4   implied covenant upon which Plaintiff's implied covenant claim is based does not exist, and

5   therefore this claim should be dismissed accordingly.

6                    **2.        The Alleged Implied Obligations Are Redundant of the Breach of**
                                 **Contract Claim and/or Inconsistent with the Express Terms of the**
7                                **Agreement.**

8          A claim for breach of the implied covenant should be dismissed where it is merely

9   redundant and duplicative of a breach of contract claim.  *See Cambridge Mgmt. Group, LLC v.*

10  *Robert A. Kosseff & Assocs., P.C.*, No. 05-3402 JAP, 2007 WL 2084895, at *4-5 (D.N.J. July 18,

11  2007) ("Court shall dismiss [claim for breach of the implied covenant] as redundant" and

12  "duplicative" where claim was based "on the same conduct which constitutes [plaintiff's] breach

13  of contract claim"); *Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996, 1003 (D.N.J. 1996)

14  ("[Plaintiff] has continually failed to demonstrate any ground upon which he could recover for a

15  breach of an implied covenant of good faith and fair dealing which would not duplicate another

16  count in his complaint").  Additionally, the implied covenant of good faith and fair dealing

17  cannot be construed to require a party to perform an act that is inconsistent with the express

18  terms of the contract.  *Kas Oriental*, 926 A.2d at 393 ("The law continues to prohibit the

19  enforcement of an implied contract or an implied provision that *conflicts* or is *inconsistent* with

20  the parties' express contract"); *Brunswick Hills Racquet Club, Inc., v. Route 18 Shopping Ctr.*

21  *Assocs., LLP*, 864 A.2d 387, 399 (N.J. 2005) (implied covenant should not be construed so

22  broadly that it imposes "unintended obligations upon parties" or "destroy[s] the mutual benefits

23  created by legally binding agreements"); *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1076 (N.J.

24  Super Ct. App. Div. 2002) ("our Supreme Court has consistently held that the 'implied covenant

25  of good faith and fair dealing cannot override an express term in a contract'") (*quoting Wilson v.*

26  *Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001); *Sons of Thunder*, 690 A.2d at 586-587).

27         Here, each of the allegedly implied obligations that form the basis of Plaintiff's implied

28  covenant claim is duplicative of Plaintiff's breach of contract claim and/or inconsistent with the

1  express terms of the Agreement.  The Complaint alleges that Rudolph breached the implied

2  covenant by (a) not "developing products using Nikoonahad's intellectual property and/or the

3  licensed technology"; (b) not adequately "prosecuting the patent application"; (c) "refusing to

4  honor its agreement to participate in dispute resolution"; and (d) "retaining control over

5  Nikoonahad's intellectual property after terminating the license."  Compl. ¶ 16.  Plaintiff also

6  alleged these same four acts and omissions as some of the grounds for his breach of contract

7  claim.  *See id.* ¶ 11 (alleging that Rudolph breached the contract when it "failed to use reasonable

8  efforts to develop products incorporating the licensed technology"; "failed to communicate with,

9  or provide information to Nikoonahad concerning the development of products and the

10  prosecution of his patent application"; "refused to perform the dispute resolution provision"; and

11  "terminated the license but retained the subject intellectual property for its own benefit").  Thus,

12  the implied covenant claim is duplicative and redundant of Plaintiff's breach of contract claim

13  with respect to these four allegations.

14      In addition to being redundant, and perhaps more importantly, most of the allegedly

15  implied obligations are also *inconsistent* with the express terms of the Agreement or too vague to

16  make any sense in light of the terms of the Agreement.

17      First, the allegation that Rudolph violated the implied covenant with respect to

18  "developing products using Nikoonahad's intellectual property and/or the licensed technology"

19  is inconsistent with the express terms of the Agreement, as discussed in Section II (*see supra* at

20  8-10) because the Agreement expressly gave Rudolph the "right" and option to develop products,

21  not the obligation to do so.  *See* Agmt. ¶¶ 2.1, 3.1.  The Agreement's purpose was not to develop

22  such products, but rather to facilitate the temporary exchange of Plaintiff's technology so that

23  Rudolph could evaluate the technology and decide whether to exercise its option to purchase the

24  technology for future product development.  *See id.*  The Agreement expressly contemplated the

25  likelihood that Rudolph might never develop or produce any products incorporating Plaintiff's

26  technology.  *See supra* at 8-9; Agmt. ¶ 10.1 ("Where no Products or Processes sold by the

27  Licensee are covered by any claims of the IP Rights, no royalties will be due . . .").

28

1    <u>Second</u>, the allegation that Rudolph violated the implied covenant with respect to

2    "prosecuting the patent application" is too vague to give Rudolph sufficient notice of what

3    exactly Plaintiff alleges was required by the alleged implied covenant with respect to the

4    prosecution of the patent application.  Plaintiff fails to allege any specific acts or omissions that

5    good faith required.  Moreover, as discussed in Section IV (*infra* at 17-20), the facts alleged in

6    the Complaint show that Plaintiff has suffered no harm with respect to the prosecution of his

7    patent application.

8        <u>Third</u>, the allegation that Rudolph violated the implied covenant when "instead of

9    developing products incorporating the licensed technology, [Rudolph] used its control of the

10   development process and Nikoonahad's services to retard and/or avoid the use of the licensed

11   technology," Compl. ¶ 17, is inconsistent with the express terms of the Agreement because, as

12   discussed in Section II *supra*, and repeated above, the Agreement expressly gave Rudolph the

13   "right" and option to develop products, not the obligation to do so.  Moreover, the allegation that

14   Rudolph sough to "retard and/or avoid use of the licensed technology" is simply illogical

15   considering that Rudolph paid $100,000 to get access to and evaluate the licensed technology.

16   Not surprisingly, the Complaint fails to provide any specific example of how (or any explanation

17   as to why) Rudolph allegedly sought to "retard and/or avoid use of the licensed technology" for

18   which it had paid good money.

19       <u>Fourth</u>, the allegation that Rudolph violated the implied covenant in "retaining control

20   over Nikoonahad's intellectual property after terminating the license" fails because, as discussed

21   in Section II (*supra* at 11-12), the Complaint does not explain how Plaintiff's intangible

22   intellectual property can be "retained."  Absent any explanation, this allegation makes no sense.

23   Unlike an article of tangible personal property that leaves the possession of its owner when it is

24   given to another, Plaintiff's intangible intellectual property (his knowledge) did not leave his

25   possession when he shared it with Rudolph.

26       Therefore, because each of the allegedly implied obligations that form the basis of

27   Plaintiff's implied covenant claim is duplicative of Plaintiff's breach of contract claim and/or

28   inconsistent with the express terms of the Agreement, this claim should be dismissed.

1

       **3.**      **The Complaint Fails to Allege any Facts to Support a Conclusion that Rudolph Acted with Ill Motive and Absent Any Legitimate Purpose.**

2

3          The implied covenant claim also should be dismissed because the Complaint sets forth a

4 conclusory allegation that Rudolph "acted in bad faith and/or with ill will," Compl. ¶ 17, but

5 alleges no supporting facts demonstrating that Rudolph acted with ill motive and absent a

6 legitimate purpose. *See Brunswick Hills*, 864 A.2d at 396 ("plaintiff may be entitled to relief

7 under the covenant if its reasonable expectations are destroyed when a defendant acts with ill

8 motives and without any legitimate purpose"); *Wade v. Kessler Inst.*, 798 A.2d 1251, 1260 (N.J.

9 2002) ("an allegation of bad faith or unfair dealing should not be permitted to be advanced in the

10 abstract and absent an improper motive.").

11          At most, the allegations in the Complaint support a conclusion that Rudolph made a

12 discretionary decision not to develop products incorporating the licensed technology, which

13 discretionary decision happened to result in an economic disadvantage to Plaintiff.  Such

14 discretionary decisions, however, are not actionable absent sufficient proof of bad motive or

15 intention. *See Brunswick Hills*, 864 A.2d at 396 ("Proof of 'bad motive or intention' is vital to

16 an action for breach of the covenant") (citation omitted); *Wilson*, 773 A.2d at 1130 ("Without

17 bad motive or intention, discretionary decisions that happen to result in economic disadvantage

18 to the other party are of no legal significance.").  Plaintiff bears the burden of "demonstrating

19 bad motive in order to assert successfully a claim of breach of the implied covenant of good faith

20 and fair dealing." *Wilson*, 773 A.2d at 1129.

21          Here, the only facts alleged by the Complaint actually suggest that Rudolph acted with a

22 legitimate purpose because the costs of "developing products incorporating the licensed

23 technology" and paying royalties on those products did not make financial sense compared to the

24 option of "developing products that would not require the payment of royalties under the

25 Agreement." *See* Compl. ¶¶ 11, 17.  Thus, at most, the allegations in the Complaint merely

26 assert that Rudolph made a discretionary decision not to develop products incorporating the

27 licensed technology, which discretionary decision happened to result in an economic

28 disadvantage to Plaintiff.  Under *Brunswick* and *Wilson*, such conduct is not actionable.

1

**IV.    THE THIRD CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD A BREACH OF A FIDUCIARY DUTY OR DAMAGES.**

2

3    To plead a claim for breach of fiduciary duty under both New Jersey and California law,[7]

4    a plaintiff must allege (1) the defendant had a duty to act for the benefit of the plaintiff on

5    matters within the scope of their relationship; (2) a breach of that duty; and (3) harm resulting

6    from the breach of the duty.  *See McKelvey v. Pierce*, 800 A.2d 840, 860 (N.J. 2002); *Apollo*

7    *Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 244 (2007).

8    Here, Plaintiff's fiduciary duty claim is based solely on allegations surrounding a single

9    provisional patent application ("the Application") that Plaintiff filed with the U.S. Patent and

10    Trademark Office ("the PTO") on December 21, 2005.  Compl. ¶¶ 20-23.  The Complaint

11    appears to allege that a fiduciary relationship arose with respect to the Application from one or

12    both of two sources:  (1) the Agreement, pursuant to which Rudolph allegedly "took control over

13    and responsibility for [Plaintiff's] intellectual property," *see id.* ¶ 20,[8] and (2) a power of

14    attorney executed by Plaintiff to permit Rudolph's outside patent counsel to prosecute the

15    Application before the PTO, pursuant to which Rudolph allegedly "acting through its agents and

16

17

18

---

19    [7] To the extent Plaintiff alleges his fiduciary duty claim arose from the Agreement, New Jersey law will govern this claim.  *Nedlloyd Lines*, 3 Cal. 4th at 463, 468-470 (contractual

20    provision that "agreement shall be governed by and construed in accordance with Hong Kong law" was broad enough to encompass claim for breach of fiduciary duty).  California law will

21    govern this claim to the extent the alleged fiduciary relationship arose outside of the Agreement. *See Palladin Partners v. Gaon*, No. 05-3305 WJM, 2006 WL 2460650, at *16 (D.N.J. Aug. 22,

22    2006) (choice of law provision that "Agreement shall be governed by and construed in accordance with the laws of the State of New York" was "not so broad as to cover Plaintiffs'

23    common-law tort claims").

24    [8] Of course, as the California Supreme Court recently held, even if Rudolph had agreed to develop and patent Plaintiff's inventions, such an obligation does not give rise to a fiduciary

25    duty.  *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, __ Cal. Rptr. 3d __, 2008 WL 1820916, at *8 (Cal. Apr. 24, 2008) ("a fiduciary relationship is not necessarily created simply when one

26    party, in exchange for royalty payments, entrusts a secret invention to another party to develop, patent, and market the eventual product"); *see also Wolf v. Superior Court*, 107 Cal. App. 4th at

27    34-35, 37 (no fiduciary relationship between author of a novel and a film studio to which author had assigned his rights for possible commercial development in return for percentage of future

28    revenues).

1   attorneys, assumed responsibility for [the Application]" filed by Plaintiff, *see id.* ¶ 21. [9]

2   However, whether based upon the Agreement or upon the power of attorney, Plaintiff's fiduciary

3   duty claim will fail because the Complaint fails to show a breach of any alleged duty or damages.

4           According to the Complaint, Rudolph allegedly owed "a fiduciary duty diligently to

5   prosecute the patent application, to inform Nikoonahad on a timely basis of matters and issues

6   pertaining to the prosecution of the patent application, and to solicit and utilize Nikoonahad's

7   expertise to secure issuance of the patent."  Compl. ¶ 22.  Plaintiff further alleges that Rudolph

8   breached this fiduciary duty in failing to (a) "communicate" with Plaintiff about the prosecution

9   of the Application; (b) "solicit or utilize" Plaintiff's expertise in prosecuting the Application; (c)

10  "notify" Plaintiff that the PTO issued an Office Action on January 14, 2008 reflecting a non-final

11  rejection of the Application; (d) "provide additional information" to the patent examiner or

12  "solicit" such information from Plaintiff following the non-final rejection; and (e) dispossess

13  itself of Plaintiff's intellectual property to allow Plaintiff to respond to the Office Action.  *Id.* ¶

14  23.

15          While Rudolph disputes the existence of any fiduciary relationship between Plaintiff and

16  Rudolph and also disputes whether any such duty could have required anything more than

17  reasonably diligent prosecution of the Application, the Court need not reach these questions in

18  deciding the current motion.  Plaintiff's Third Cause of Action should be dismissed for the

19  simple reason that the facts alleged in the Complaint show that the time has not yet expired for

20  performance of the alleged obligations.  Although the PTO issued a non-final Office Action on

21  January 14, 2008, *id.*, under federal patent law, the time period to respond to this non-final

22  rejection of the Application does not expire until July 14, 2008, *i.e.*, six months after issuance of

23  the Office Action and more than three months after Plaintiff filed this lawsuit.  *See* 35 U.S.C. §

24  133; 37 C.F.R. §§ 1.134, 1.136.  Accordingly, there is still plenty of opportunity to respond to

25  ――――――――――――――――

26      [9] The Complaint fails to mention that this power of attorney was a mere prerequisite imposed
    by federal patent law to permit the patent attorneys to prosecute the Application before the PTO.

27  *See* 37 C.F.R. §§ 1.31 ("An applicant for patent may file and prosecute his or her own case, or he
    or she may give a power of attorney so as to be represented by one or more patent practitioners

28  or joint inventors."), 1.32 (setting forth requirements for power of attorney).

1    the non-final rejection of the Application.  The Complaint fails to show why any of the alleged

2    obligations should have been performed prior to the date the lawsuit was filed or any other facts

3    that would establish that anyone has failed to diligently prosecute the Application before the

4    PTO.

5           Moreover, the Complaint does not allege that Plaintiff has suffered any harm as a result

6    of the January 2008 non-final rejection of the Application or that the alleged breach of fiduciary

7    duty was the proximate cause of the non-final rejection.  Indeed, Plaintiff could not have suffered

8    any harm as a result of the non-final rejection of the Application because a non-final rejection is

9    just what it says:  non-final.  *See* 37 C.F.R. §§ 1.111 (explaining process for responding to non-

10   final rejection), 1.112 (after reply by applicant to a non-final office action the application "will

11   be reconsidered and again examined").  An initial non-final office action rejecting a patent

12   application is the normal response of the PTO to nearly every patent application during the

13   lengthy process of prosecuting a patent and is in no way detrimental to the applicant so long as

14   the rejection can be overcome with a meritorious response as to why the patent claims should be

15   allowed.  *See id*; U.S. Patent and Trademark Office, General Information Concerning Patents,

16   *available at* http://www.uspto.gov/web/offices/pac/doc/general/index.html#office ("It is not

17   uncommon for some or all of the claims to be rejected on the first Office action by the examiner;

18   relatively few applications are allowed as filed.").  Courts recognize that non-final rejections are

19   the "customary" response of the PTO to both patent and trademark applications.  *See, e.g.*,

20   *Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 215 (E.D.N.Y. 2007) ("It is customary

21   for an examining attorney at the PTO to issue a non-final office action setting forth the legal

22   status of a trademark application.  The grounds for refusal in a non-final office action, however,

23   do not constitute a final rejection of the application, and the applicant will typically be provided

24   with an opportunity to explain why its application should be accepted.").

25          Therefore, because Plaintiff has suffered no harm from the non-final rejection of the

26   Application and because the patent attorneys (and Plaintiff if he chooses to take over) still have

27   plenty of ability and opportunity to respond to the non-final rejection of the Application, no

28

1   breach could have occurred and no damages could have been incurred at the time Plaintiff filed

2   this lawsuit.  Accordingly, the Third Cause of Action should be dismissed.

3   **V.      THE FOURTH CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE
           PLAINTIFF HAS FAILED TO PLEAD PROMISSORY FRAUD.**

4

5          The "tort of promissory fraud . . . is cognizable when a party enters into an agreement

6   without intending to be bound by its terms."  *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D.

7   Cal. 2002) (*citing Locke v. Warner Bros., Inc.*, 57 Cal. App. 4th 354, 367 (1997)). [10]  Like other

8   fraud claims, an action for promissory fraud requires the plaintiff to prove that "a material and

9   knowingly false representation was made with the intent to induce action, and that such

10  representation caused reasonable and detrimental reliance on the part of the plaintiff."  *Shurpin v.*

11  *Elmhirst*, 148 Cal. App. 3d 94, 101 (1983).

12         Here, the Complaint alleges that Rudolph committed promissory fraud because it "had no

13  intention of performing the Agreement" and instead sought to "first pursue the development of

14  [non-royalty-bearing] products."  Compl. ¶¶ 27-28.  This claim should be dismissed because the

15  Complaint fails to allege any facts to support the conclusory allegation that Rudolph did not

16  intend to perform its obligations under the Agreement at the time the Agreement was executed in

17  September 2006, and also because the Complaint fails to allege any conduct by Rudolph in

18  connection with this claim that would have been a breach of a promise to Plaintiff.

19              **1.      The Complaint Fails to Allege Sufficient Facts to Support the
                      Conclusory Allegation of Rudolph's Intent to Perform.**

20

21          "To maintain an action for deceit based on a false promise, one must *specifically allege*

22  *and prove*, among other things, that the promisor did not intend to perform at the time he or she

23

_____

24         [10] Plaintiff's promissory fraud claim is governed by California law because fraud claims are
   not covered by the Agreement's narrow choice of law provision, *see Palladin*, 2006 WL
25  2460650, at *16 (choice of law provision that "Agreement shall be governed by and construed in
   accordance with the laws of the State of New York" was "not so broad as to cover Plaintiffs'
26  common-law tort claims"); *Shapiro v. Barnea*, No. 06-811 JBS, 2006 WL 3780647, at *4 n.2
   (D.N.J. Dec. 21, 2006) (New Jersey choice of law provision that referred only to the
27  "constru[ction] and enforce[ment]" of the agreement did not apply to "fraud claim, which is not a
   claim for the construction or enforcement of the Agreement").
28

1   made the promise and that it was intended to deceive or induce the promisee to do or not do a

2   particular thing." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 159 (1991)

3   (emphasis added); *Dozier v. Maispace*, No. 05-1761 PVT, 2007 WL 518622, at *4 (N.D. Cal.

4   Feb. 13, 2007) (*quoting Tarmann*).  Promissory fraud claims are held to the same heightened

5   pleading standards as any fraud cause of action, which "must be pleaded with specificity,

6   meaning . . . 'every element of the cause of action for fraud must be alleged in full, *factually and*

7   *specifically*.'"  *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 961 (2005)

8   (emphasis added) (*quoting Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324,

9   1331 (1986)).  "General and conclusory claims of fraud will not suffice."  *Conrad v. Bank of*

10  *Am.*, 45 Cal. App. 4th 133, 156 (1996) (*citing Wilhelm*).  Thus, a "'plaintiff [that] adduces no

11  further evidence of fraudulent intent than proof of nonperformance . . . will never reach a jury.'"

12  *Magpali v. Farmers Group, Inc.*, 48 Cal. App. 4th 471, 481 (1996) (*quoting Tenzer v.*

13  *Superscope, Inc.*, 39 Cal. 3d 18, 30-31 (1985)).

14          Significantly, "promissory fraud is not exempted from the strictures of Rule 9(b), and a

15  plaintiff is required to plead 'facts from which the Court can infer that the allegedly fraudulent

16  statements were actually false when made.'"  *Hsu*, 211 F.R.D. at 620 (citation omitted).

17  "Although intent can be averred generally under Rule 9(b), a plaintiff must point to *facts* which

18  show that defendant harbored an intention not to be bound by terms of the contract at formation."

19  *Id.*  Where a complaint merely alleges that "[defendant] had no intention to be bound by the

20  terms as agreed," the complaint has "failed to plead fraud with specificity as required by Rule

21  9(b)."  *Id.*  For this reason, both state and federal courts in California routinely dismiss

22  promissory fraud claims that fail to allege sufficient factual detail to support the allegation that

23  the promisor had no intent to perform the promise at the time that the promise was made.  *See,*

24  *e.g.*, *Tarmann*, 2 Cal. 4th at 159 (demurrer was properly sustained where alleged facts

25  supported nothing more than a "negligent false promise" rather than a promise "with no intent to

26  perform"); *Comerica Bank v. McDonald*, No. 06-03735 RMW, 2006 WL 3365599, at *3-4 (N.D.

27  Cal. Nov. 17, 2006) (dismissing promissory fraud claim for failure "to allege with sufficient

28  specificity" facts underlying claim) (quoting *Tarmann*); *Hsu*, 211 F.R.D. at 620 (dismissing

1    promissory fraud claim where plaintiff failed to "allege specific facts from which a trier of fact

2    could infer that defendant did not intend to be bound by the terms of the agreements when

3    made").

4         Even setting Rule 9(b) aside, the Supreme Court has held that, under the normal notice

5    pleading standards of Rule 8(a), "a plaintiff's obligation to provide the 'grounds' of his

6    'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

7    the elements of a cause of action will not do." *Bell At.*, 127 S. Ct. at 1964-65 (citation omitted).

8    A complaint's "[f]actual allegations must be enough to raise a right to relief above the

9    speculative level" or the complaint cannot withstand a motion to dismiss. *Id.*

10        Here, Plaintiff's promissory fraud claim should be dismissed because the Complaint fails

11   to allege sufficient factual detail to support the conclusory allegation that Rudolph "had no

12   intention of performing the Agreement." The only support offered for this bald assertion is the

13   allegation that Rudolph ultimately failed to perform an alleged promise to "develop products

14   using [Plaintiff's] technology." *See* Compl. ¶ 29. However, even if Rudolph had promised to

15   develop products using Plaintiff's technology (which it did not), evidence of mere

16   nonperformance cannot support a promissory fraud claim under *Magpali* and *Tenzer*. Therefore,

17   because the Compliant alleges no other "facts which show that defendant harbored an intention

18   not to be bound by terms of the contract at formation," the promissory fraud claim should be

19   dismissed.

20              **2.    The Promises Alleged in the Complaint are Inconsistent with the
                        Parties' Written Integrated Agreement.**

21

22        In any event, the sole promise upon which Plaintiff's promissory fraud claim is based, the

23   alleged promise that Rudolph "would develop products using [Plaintiff's] technology," Compl. ¶

24   29, is completely inconsistent with the express terms of the Agreement. As explained above, the

25   Agreement imposed no obligation on Rudolph to develop any products. *See supra* Sections II

26   and III. Thus, Plaintiff cannot look to the Agreement to supply the alleged "promises" upon

27   which Plaintiff's promissory fraud claim is based. Nor can Plaintiff look outside the Agreement

28   for those alleged promises because promissory fraud claims should be dismissed where they are

premised on alleged prior or contemporaneous statements that are inconsistent with a written

integrated agreement.  *See Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 346 (2004) ("[O]ur

courts have consistently rejected promissory fraud claims premised on prior or contemporaneous

statements at variance with the terms of a written integrated agreement."); *Slivinsky v. Watkins-*

*Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990) ("[plaintiff's] alleged reliance on [defendant's]

oral promises [were] simply not justifiable [where] the representations contradict[ed] the parties'

integrated employment agreement").  Here, the parties' integrated written agreement[11] prevents

Plaintiff from relying on any allegations that go beyond what is consistent with the parties'

Agreement.

Therefore, because the Agreement contains no promise that Rudolph would develop

products using the licensed technology, and because the Complaint fails to allege any prior or

contemporaneous promises that are consistent with the parties' written Agreement, Plaintiff's

cause of action for promissory fraud should be dismissed.

## CONCLUSION

For the reasons set forth herein, the Complaint's breach of contract, implied covenant,

fiduciary duty, and promissory fraud claims should be dismissed.


Dated: May 9, 2008                          WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation



                                            By:  /s/ Keith E. Eggleton
                                                 Keith E. Eggleton

                                            Attorneys for
                                            RUDOLPH TECHNOLOGIES, INC.

---

[11] Paragraph 17.1 of the Agreement provides as follows:

It is expressly understood and agreed by the Parties hereto that this instrument
contains the entire agreement between the Parties with respect to the subject matter
hereof and that all prior representations, warranties, or agreements relating hereto
have been merged into this document and are thus superseded in totality by this
Agreement. This Agreement may be amended or modified only by a written
instrument signed by the duly authorized representatives of both of the Parties.