1  JOHN W. CLARK (CSB #036664)
   Attorney at Law
2  2600 El Camino Real, Suite 410
   Palo Alto, California 94306
3  Tel.: (650) 354-3605
   Fax: (650) 354-3606
4  john@johnclarklaw.com

5  Ardell Johnson, Esq. (CSB #095340)
   Korda, Johnson& Wall LLP
6  66 East Santa Clara Street, #250
   San Jose, CA 95113
7  Tel:  (408) 494-0700
   Fax: (408) 494-0707
8  arjoh@pacbell.net

9

10  Attorneys for Plaintiff MEHRDAD NIKOONAHAD

11

12            UNITED STATES DISTRICT COURT

13          NORTHERN DISTRICT OF CALIFORNIA

14                 SAN JOSE DIVISION

15

16  MEHRDAD NIKOONAHAD,                    )  Case No.:  CV 08-2290 JF
                                           )
17          Plaintiff,                     )  **PLAINTIFF MEHRDAD
                                           )  NIKOONAHAD'S OPPOSITION TO
18      v.                                 )  DEFENDANT RUDOLPH
                                           )  TECHNOLOGIES, INC.'S MOTION
19  RUDOLPH TECHNOLOGIES, INC. and         )  TO DISMISS**
    DOES 1-25, inclusive,                  )
20                                         )  **Date:  July 25, 2008
            Defendants.                    )  Time:  9:00 a.m.
21                                         )  Dept:   3
                                           )  Judge:  Hon. Jeremy Fogel**
22                                         )

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION. ...........................................................................................................1

II.  STATEMENT OF FACTS ...........................................................................................1

III. PLAINTIFIF'S CLAIMS...............................................................................................3

IV. LEGAL ARGUMENT....................................................................................................4

    A.   Legal Standard ......................................................................................................4

    B.   The First Cause of Action States Facts Sufficient to Constitute a
        Claim for Relief ....................................................................................................5

    C.   The Second Cause of Action States Facts Sufficient to Constitute a
        Claim for Relief ....................................................................................................7

        1.   The complaint alleges facts establishing defendant breached the
             covenant of good faith and fair dealing implied under New Jersey
             Law. .........................................................................................................7

        2.   The Implied Obligations are not Inconsistent with the Express
             Terms of the Contract. ...........................................................................9

        3.   The Implied Obligations are not Redundant to the Express Terms
             of the Contract.......................................................................................10

        4.   Nikoonahad's Complaint Describes Rudolph's Bad Faith .................11

    D.   The Third Cause of Action States Facts Sufficient to Constitute a
        Claim for Relief ....................................................................................................14

    E.   The Fourth Cause of Action States Facts Sufficient to Constitute a
        Claim for Relief ....................................................................................................15

        1.   The Complaint Alleges Sufficient Facts to Support the Allegation
             of Rudolph's Lack of Intent to Perform................................................15

        2.   The Promises Alleged in the Complaint Are Not Inconsistent With
             the Agreement........................................................................................15

V.   CONCLUSION...............................................................................................................16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

**Cases**

*Aronsohn v. Mandara,*
98 N.J. 92, 100 (1984) .................................................................................. 10, 11

*Bak-A-Lum Corp. v. Alcoa Bldg. Prods., Inc.,*
69 N.J. 123, 129-30 (1976) .......................................................................... 11, 13,

*Balistreri v. Pacifica Police Department,*
901 F.2d 696, 699 (9th Cir. 1990) ...................................................................... 4

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Associates,*
182 N.J. 210 (2005) ...................................................................................... 12, 13

*Delacruz v. Tormey,*
582 F.2d 45, 48 (9th Cir. 1978) ......................................................................... 4

*Gilligan v. Jamco Development Corp.,*
108 F.3d 246, 249 (9th Cir. 1997) ..................................................................... 4

*Moore v. Kayport Package Express, Inc.,*
885 F.2d 531, 540 (9th. Cir. 1989) ................................................................... 15

*Nami v. Fauver,*
82 F.3d 63, 65 (3rd Cir. 1996) ..................................................................... 5, 15

*Pareto v. F.D.I.C.,*
139 F.3d 696, 699 (9th Cir. 1998) ............................................................... 4, 15

*Seidenberg v. Summit Bank,*
348 N.J.Super 243, 262-263 (2002) ................................................................ 14

*Semegen v. Weidner,*
788 F.2d 727, 731 (9th. Cir. 1985) .................................................................. 15

<u>*Sons of Thunder v. Borden, Inc.,*</u>
148 N.J. 396, 420 (1997) ............................................................ 6, 7, 8, 11, 13

*Truax v. Corrigan,*
257 U.S. 312, 342, 42 S. Ct. 124, 133, 66 L. Ed. 254, 267 (1921)............................ 14

*Wilson v. Amerada Hess Corp.,*
168 N.J. 236 (2001) .................................................. 7, 8, 10, 11, 12, 13

**Statutes**

Federal Rules of Civil Procedure, Rule 12(b)(6) .......................................................... 4

Federal Rules of Civil Procedure, Rule 9(b) ……………………………………………15

## I.  INTRODUCTION.

Plaintiff Mehrdad Nikoonahad ("Nikoonahad") submits this Memorandum of Points and Authorities in Opposition to the motion of defendant Rudolph Technologies, Inc. ("Rudolph") to dismiss claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  Each of the four claims for relief meets federal pleading requirements so that the motion should be denied.

Rudolph asserts as the basis for its Motion to Dismiss that it had no contractual obligation to do anything after paying Nikoonahad $100,000.  Rudolph argues  ". . . the only obligation imposed by the Agreement following a refusal by Rudolph to exercise its options … is that Rudolph abide by its obligations under the parties' confidentiality agreement," but this argument cannot prevail because it contradicts the express language of the contract explaining why Rudolph made the agreement:

> WHEREAS, Licensee desires to acquire licenses to and/or exclusive ownership of certain of the patents, patent applications, technical knowledge and know-how of the Licensor as hereinafter provided . . ."

Pursuant to that goal, Nikoonahad, for $100,000, granted to Rudolph:

> "…the exclusive, nontransferable, non sub-licensable right and license to develop, test, manufacture, have manufactured for Licensee, use, sell, or offer for sale the Licensed Subject Matter (the 'Development License') for a period of eighteen (18) months from the effective date of this Agreement."

As stated, Nikoonahad licensed the technology exclusively to Rudolph because Rudolph agreed to develop, test, manufacture, have manufactured, use, sell or offer for sale the Licensed Subject Matter. Nikoonahad did not enter into the Agreement to be paid $100,000 and then have Rudolph do nothing in the ensuing 18 months.  He expected and the Agreement required Rudolph to perform what it agreed to do.  Each cause of action states a claim for relief and the motion to dismiss should be denied in its entirety.

## II.  STATEMENT OF FACTS

Nikoonahad, a Ph.D. in electronic engineering, is the inventor on numerous patents and is recognized by semiconductor equipment manufacturers as an expert in the field of wafer inspection and measurement used in semiconductor manufacturing.  In 2005, Rudolph engaged Nikoonahad to consult and assist Rudolph with its strategy to develop products for Optical

1  Critical Dimension measurement and to identify opportunities for applying that technology to
2  Rudolph's existing products.  During his consulting, Nikoonahad proposed existing
3  technologies for Rudolph to consider and also disclosed new technologies for which he had
4  applied for patents.  Nikoonahad informed Rudolph it would have to license the latter
5  technologies from him if it wished to use them.  When his consulting arrangement with Rudolph
6  ended in April, 2005, Nikoonahad told Rudolph to contact him if it wanted to use those
7  technologies.  Complaint, ¶¶ 2, 5-6.

8  About a year later, Rudolph expressed interest in Nikoonahad's intellectual property.  In
9  May, 2006 Rudolph engaged Nikoonahad to consult for a two-months and, in order to explore
10 Nikoonahad's intellectual property, Rudolph signed a non-disclosure agreement.  After
11 Nikoonahad disclosed his intellectual property, Rudolph expressed its desire to acquire it.
12 Rudolph negotiated for more than five months to acquire Nikoonahad's technology and
13 eventually reached an agreement for an exclusive license to develop products using it (the
14 "Agreement").  The Agreement required Nikoonahad to provide technical services to assist the
15 development of these products.  Complaint, Exh. A.  4.1.  Rudolph agreed to pay Nikoonahad a
16 small cash payment, a reduced hourly rate for his services, and a percentage of Rudolph's gross
17 sales of products and processes developed with the technology.  Complaint, ¶¶ 7-9.

18 Nikoonahad performed his part of the Agreement, but Rudolph did not.  From the very
19 beginning Rudolph breached the contract in that:

20 • It continuously failed to perform its obligations and delayed and frustrated the
21   contract objective of development product;
22 • Rudolph failed to conclude its due diligence investigation and make the first
23   payment to Nikoonahad in a timely manner;
24 • Rudolph failed to pay the second installment to Nikoonahad in a timely manner;
25 • Rudolph failed to engage or utilize Nikoonahad's consulting services for
26   developing products or provide information to Nikoonahad concerning the
27   development of products;

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
Case No.  CV 08-2290 JF

2

- Rudolph failed to use reasonable efforts to develop products incorporating the licensed technology and instead used Nikoonahad's disclosures and consulting services for the purposes of developing products that would not require the payment of royalties;
- Rudolph refused to perform the dispute resolution provision;
- Rudolph terminated the license but retained the subject intellectual property for its own benefit while depriving Nikoonahad of his intellectual property and the benefits of the contract;
- Rudolph refused to mediate pursuant to the terms of the Agreement. Complaint, ¶¶ 10-12.

Nikoonahad has sustained a monetary loss and harm due to Rudolph's breach of the Agreement. Complaint, ¶ 13.

## III. PLAINTIFIF'S CLAIMS

Plaintiff alleges four claims in this lawsuit. The first two claims are that Rudolph breached the contract and covenant of good faith and fair dealing that is an implied part of the contract. The objective of the contract was to develop and sell products based on Nikoonahad's technology. Nikoonahad gave Rudolph exclusive possession of his technology and he committed to provide his personal services at a reduced rate to assist Rudolph's product development. Rudolph made no effort to develop products or to use Nikoonahad's services to develop product. These causes of action are valid because Rudolph did not perform the primary commitment it made in the contract to develop products, and because it did not even try to do so.

Nikoonahad's third claim is for breach of fiduciary duty. This claim arises from the fact that Rudolph took possession of Nikoonahad's patent application and undertook the responsibility for prosecuting the application to secure the patent. Rudolph never discussed the application with Nikoonahad after taking responsibility for it and Rudolph never provided Nikoonahad any information about the status of the application. Rudolph terminated the contract but kept control of the application and when the U.S. Patent Office issued a non-final

rejection of the application, Rudolph did not respond or inform Nikoonahad of the Office's

action, and allowed the time for response to expire.  Nikoonahad did not discover the Office's

action until shortly before filing this lawsuit, at which time it was too late for him to resume

prosecuting it.  This cause of action is valid because Rudolph had control over Nikoonahad's

intellectual property, represented by the patent application, and concealed the fact that it was

destroying the value by abandoning the prosecution of the application.

Finally, Nikoonahad's fourth claim is for promissory fraud.  Rudolph promised to

develop products using Nikoonahad's technology and to prosecute his patent application, yet

Rudolph did nothing to develop products, never sought Nikoonahad's input on the application

and concealed the non-final rejection from him.  Plaintiff's claim is that Rudolph never intended

to perform the contract.  Instead, Rudolph wanted to control the technology long enough to

work around it and/or compromise its appeal to the industry.

## IV. LEGAL ARGUMENT

### A.  Legal Standard

If there is either a lack of recognizable legal theory or the absence of sufficient facts

alleged under a cognizable legal theory, a motion to dismiss pursuant to Rule 12(b)(6) is proper.

*Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  Thus, the court

must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal

remedy.  Unless the answer is unequivocally "no," the court must deny the motion.  *Delacruz v.

Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).

Because of the lesser role pleadings play in federal practice and the liberal policy for

amendment, a motion to dismiss pursuant to Rule 12(b)(6) "is viewed with disfavor and is rarely

granted."  *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

In reviewing the motion, the court must accept as true all material allegations in the

Complaint as well as all reasonable inferences to be drawn from them.  *Pareto v. F.D.I.C.*, 139

F.3d 696, 699 (9th Cir. 1998).  Further, plaintiff's ability to prove his allegations is generally of

no concern in ruling on the motion because the consideration is not whether the plaintiff will

1    ultimately prevail, but whether he is entitled to offer evidence to support his claims. *Nami v.*

2    *Fauver*, 82 F.3d 63, 65 (3rd Cir. 1996).

3        Given these principles, the motion should be denied as to each cause of action.

4    **B.  The First Cause of Action States Facts Sufficient to Constitute a
5        Claim for Relief**

6        The Agreement provided Rudolph a license to use the technology to develop products.

7    Beyond that, it afforded Rudolph a first option and a second option to purchase the technology

8    outright.  Rudolph breached the contract because it never attempted to do any product

9    development using the technology.

10        The initial development license is contained at Section 2.1 and pursuant to that section

11    Nikoonahad granted to Rudolph an exclusive, non-transferable license to "develop, test,

12    manufacture, have manufactured for Licensee, use, sell, or offer for sale" the subject technology

13    for 18 months from the effective date of the Agreement.  The fee for the initial development

14    license Agreement was $100,000, and the terms are contained at Section 5.1 of the Agreement.

15    The licensed subject matter is described in Section 1.4, which includes all patents and patent

16    applications in the subject technology, unpatented inventions, discoveries and technical

17    information regarding the subject technology and know-how, processes and procedures, etc.

18    relating to the subject technology.  During the period of the initial development license,

19    Nikoonahad was required to provide consulting services over a 12 month period following the

20    effective date of the Agreement on at least four topics:

21        1.    Development of multi-azimuth, multi-angle scatterometry for incorporation into
22            Licensee's next-generation OCD metrology products;

23        2.    Market research to identify key applications and points of differentiation for
24            multi-angle, multi-azimuth OCD products;

25        3.    Accompanying Licensee sales and marketing personnel for customer visits to
26            promote current and next-generation OCD products and technologies; and

27        4.    Lead efforts to set-up an algorithm development team (possibly offshore) for
28            OCD modeling for the benefit of Licensee.

Agreement, Section 4.1.

Nikoonahad was also required to provide additional technical information related to the licensed subject matter.

The Agreement provided that during the 18-month initial development license, Rudolph had the right to acquire the licensed subject matter for a fee of $600,000 to be paid as described in Section 5.2 of the Agreement.  Nikoonahad also granted to Rudolph a second option covering any additional inventions conceived by Nikoonahad during the term of the Agreement.

In his complaint, Nikoonahad has alleged he performed his part of the Agreement including among other things disclosing to Rudolph his inventions and technical information and know-how and making himself available to Rudolph for consulting toward the development of product using the licensed technology.  Complaint, ¶10.

Nikoonahad alleges that Rudolph breached the contract by failing to perform its obligations and delayed and frustrated the contract objective of developing product and described the ways in which Rudolph failed to pursue development of the technology.  Complaint, ¶11.

Rudolph claims it had no obligation to pursue development of any products.  This ignores the fact that product development was the heart of the Agreement.  Rudolph committed to develop products using Nikoonahad's technology and expertise for 18 months.  During that 18 months Rudolph had an option to purchase the technology.  At the end of 18 months, the contract and Rudolph's option to purchase the technology terminated.

Rudolph argues that Nikoonahad is asking the Court to imply a term of the contract. Nothing needs to be implied.  The purpose of Nikoonahad's license to Rudolph, as stated in Section 2.1 of the Agreement, was for Rudolph to develop, test, manufacture, etc. the licensed technology on an exclusive basis for a period of 18 months.  Rudolph in fact is asking the Court to give the contract exactly the opposite meaning, to wit, "Rudolph is under no obligation to do anything for 18 months after payment of the license fee."

The First Cause of Action states a claim under New Jersey law.  See e.g. *Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 420 (1997).

## C. The Second Cause of Action States Facts Sufficient to Constitute a Claim for Relief

### 1. The complaint alleges facts establishing defendant breached the covenant of good faith and fair dealing implied under New Jersey Law.

Rudolph argues Nikoonahad's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because "it is based upon an implied covenant that does not exist under New Jersey (or California ) law." (Deft.'s Mem., p. 12:11-12.)   Rudolph is wrong. Under New Jersey law, the covenant of good faith and fair dealing is contained in all contracts. It mandates that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *Sons of Thunder v. Borden, Inc.*, *supra* at p. 420.  The complaint alleges defendant violated this covenant: "In doing the things herein alleged, RTEC acted in bad faith and/or with ill will toward Nikoonahad to deprive Nikoonahad of the benefits of the contract."  Complaint ¶ 17, p. 5:5-6.

As explained by the New Jersey Supreme Court, in *Wilson v. Amerada Hess Corp.,*168 N.J. 236 (2001), the implied covenant of good faith and fair dealing is breached when a party exercising its discretionary authority under the contract acts arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract. *Wilson* at p. 251.   This is precisely what Rudolph did to Nikoonahad:

> RTEC breached the implied covenant of good faith and fair dealing in the Agreement in that, among other things, RTEC acted arbitrarily, unreasonably, or capriciously with regard to developing products using Nikoonahad's intellectual property and/or the licensed technology, with regard to prosecuting the patent application, by refusing to honor its agreement to participate in dispute resolution, and by retaining control over Nikoonahad's intellectual property after terminating the license to prevent Nikoonahad from realizing the full benefit of the Agreement.

> Complaint ¶ 16, p. 4:26-5:4.

Rudolph takes issue with the allegation in paragraph 15 of the complaint that "there was an implied covenant of good faith and fair dealing that required

1    each party to use his/its best efforts to perform the Agreement to accomplish said

2    purpose for their mutual benefit," but that allegation is neither incorrect nor is it

3    the essence of Nikoonahad's claim for breach of the implied covenant.  It is an

4    inherent part of the implied covenant that both parties act in good faith to perform

5    the contract.[1]  Otherwise, a defendant with impunity could act arbitrarily,

6    unreasonably or capriciously to deprive the plaintiff of contractual benefits by

7    making no effort to perform the contract.  There is no difference between action

8    and inaction when the conduct is arbitrary, unreasonable or capricious conduct

9    and designed to deprive a party of contract benefits.[2]

10           The fundamental allegations upon which Nikoonahad's claim for breach

11   of the implied covenant is based are:

12           The parties entered into the Agreement with the express intention
13           and for the purpose of developing products incorporating the
             licensed technology that would benefit RTEC by generating product
14           revenue and benefit Nikoonahad by generating royalty revenue.
15   Complaint, ¶ 15, p. 4:20-22,

16           RTEC acted arbitrarily, unreasonably, or capriciously with regard to
             developing products using Nikoonahad's intellectual property
17           and/or the licensed technology, with regard to prosecuting the
             patent application, by refusing to honor its agreement to participate
18           in dispute resolution, and by retaining control over Nikoonahad's
19           intellectual property after terminating the license to prevent
             Nikoonahad from realizing the full benefit of the Agreement.
20   Complaint, ¶ 16, p. 4:26-5:4, and

21

22   [1] In *Sons of Thunder, Inc. v. Borden, Inc.*, the court upheld a jury verdict finding a breach of the
     implied covenant of good faith and fair dealing because, as the court said, "[i]n viewing the
23   evidence in a light most favorable to Sons of Thunder, we find that the trial court correctly
     determined that the jury could have reasonably found that Borden breached its obligation to
24   perform its duties in good faith."  *Sons of Thunder, Inc. v. Borden, Inc., supra,* at p. 424,

25   [2] [W]here a party alleges frustration of its expectation or fundamental purpose in entering the
     contract, the question of what interest will be protected by the implied duty answers itself; the
26   plaintiff's interest is internal to the understanding of the parties and good faith requires the
     defendant not exercise such discretion as it may have under the literal terms of the contract to
27   thwart plaintiff's expectation or purpose. *Wilson*, 168 N.J. at 250.

28

RTEC acted in bad faith and/or with ill will toward Nikoonahad to deprive Nikoonahad of the benefits of the contract.  Nikoonahad is informed and believes and thereon alleges that instead of developing products incorporating the licensed technology, RTEC used its control of the development process and Nikoonahad's services to retard and/or avoid the use of the licensed technology.

Complaint, ¶ 17, p. 5:5-9.

These foregoing allegations meet all of the requirements under New Jersey law to state a claim for breach of the implied covenant of good faith and fair dealing.

### 2. The Implied Obligations are not Inconsistent with the Express Terms of the Contract.

Rudolph's argument is that it had no obligation to do anything pursuant to the terms of the Agreement.  It claims a right under the contract to do nothing after it paid the initial $100,000 to Nikoonahad.  Rudolph's position contradicts both the express language and the entire purpose of the Agreement.

Rudolph argues "[t]he Agreement's purpose was not to develop such products, but rather to facilitate the temporary exchange of Plaintiff's technology so that Rudolph could evaluate the technology and decide whether to exercise its option to purchase the technology for future product development." (Deft's Mem. p. 14:21-24).  The express language says no such thing, and the word "evaluate" is not even contained in the contract.  On the contrary paragraph 2.1 of the Agreement states in pertinent part " . . . Licensor hereby grants to Licensee the exclusive, nontransferable, non sub-licensable right and license to develop, test, manufacture, and have manufactured for Licensee, use [sic], sell, or offer for sale the Licensed Subject Matter (the "Development License") for a period of eighteen (18) months from the effective date of this Agreement."  Paragraph 2.1 reflects the parties' expectation that Rudolph was going to develop products using Nikoonahad's technology.  If the parties had no such expectation, it would not have been necessary to include paragraphs 5.1.1 and 5.1.2 in the Agreement.  These paragraphs expressly allowed Rudolph to back out of the Agreement at different stages in the development process.  Paragraph 5.1.1.1 allowed Rudolph to examine the technology for 6 weeks and back out of the contract without paying Nikoonahad anything.  After that 6 week

1   period, pursuant to paragraph 5.1.2 Rudolph had another 3 month period to assess the

2   technology during which it could have backed out having paid Nikoonahad only $50,000.00.

3   These provisions all contradict Rudolph's argument that it was not required to develop products,

4   merely evaluate the technology.

5         The parties' intention to develop products is reflected throughout the Agreement.  For

6   example, paragraph 5.1, which provides that "Royalties shall accrue when Products and/or

7   Processes with respect to which royalty payments as set forth in Exhibit B are required by this

8   Agreement are first shipped, or otherwise transferred pursuant to a sale of the Products and/or

9   Processes."  There was no need for this paragraph if Rudolph's only obligation was to evaluate

10  the technology.  Obviously, the parties expected "Products and/or Processes" would be

11  developed and sold.  Similarly, paragraph 8.1, specifying how Rudolph was supposed to report

12  it sales of "Products and/or Processes," was completely unnecessary if the Agreement was made

13  for nothing more than allowing Rudolph to evaluate the technology.

14        Defendant's claim that the "Agreement's purpose was not to develop such products" is

15  unsupported by any language in the agreement, it is contradicted by numerous provisions of the

16  Agreement and it makes no sense.  If the purpose of the Agreement was to allow Rudolph to

17  evaluate the technology, there is no reason why this sophisticated manufacturer of

18  semiconductor equipment would not have said so in the Agreement.   Defendant's argument is

19  inconsistent with the Agreement.  Plaintiff's claims are supported by the plain meaning of the

20  contract.

### 3.   The Implied Obligations are not Redundant to the Express Terms of the Contract.

21

22        Claims under New Jersey law for breach of the implied covenant of good faith and fair

23  dealing are not redundant of claims for breach of contract.  In the *Wilson* case, the New Jersey

24  Supreme Court made the following observation:

25

26      Implied covenants are as effective components of an agreement as those
    covenants that are express. *Aronsohn v. Mandara*, 98 N.J. 92, 100 (1984).

27      Although the implied covenant of good faith and fair dealing cannot override an
    express term in a contract, a party's performance under a contract may breach

28      that implied covenant even though that performance does not violate a pertinent

1  express term. *Sons of Thunder, Inc.*, *supra*, 148 N.J. at 419. Unlike many other
2  states, in New Jersey a party to a contract may breach the implied covenant of
   good faith and fair dealing in performing its obligations even when it exercises
3  an express and unconditional right to terminate. *Id.* at 422; see also *Bak-A-Lum
   Corp. v. Alcoa Bldg. Prods., Inc.*, 69 N.J. 123, 129-30 (1976).

4  *Wilson v. Amerada Hess Corp., supra* at p. 244.

5      The implied covenant of good faith and fair dealing is not redundant because it allows

6  Nikoonahad to recover damages even if Rudolph's performance did not violate an express term

7  of the Agreement.  That is important since Rudolph claims there is no express term in the

8  Agreement requiring it to develop product and/or processes.  The claim for breach of the

9  implied covenant of good faith and fair dealing is appropriate because plaintiff claims Rudolph

10 used its control over the technology and development process to retard and avoid implementing

11 Nikoonahad's technology.  Complaint, ¶ 16, p.4:26-5:4.  In other words, Rudolph acted in bad

12 faith by doing nothing to develop products or processes so that it could control Nikoonahad's

13 technology without paying royalties and misuse that control to keep the technology out of the

14 marketplace.

15          **4.   Nikoonahad's Complaint Describes Rudolph's Bad Faith**

16      Nikoonahad's allegations clearly state Rudolph's conduct was motivated by ill will

17 without any legitimate purpose in furtherance of the terms of the Agreement.

18          In doing the things herein alleged, RTEC acted in bad faith and/or
19          with ill will toward Nikoonahad to deprive Nikoonahad of the
            benefits of the contract.  Nikoonahad is informed and believes and
20          thereon alleges that instead of developing products incorporating
            the licensed technology, RTEC used its control of the development
21          process and Nikoonahad's services to retard and/or avoid the use
22          of the licensed technology.

23 Complaint, ¶ 17, p. 5:5-9.

24      The complaint contains a laundry list of Rudolph's bad faith conduct including,

25      -   Not making payments in a timely manner;

26      -   No engaging or using Nikoonahad's consulting services to developing products

27          incorporating the licensed technology;

28      -   Not communicating with Nikoonahad about the development of products

1    -    Not communicating with Nikoonahad regarding the patent application;

2    -    Not making reasonable efforts to develop products incorporating the licensed

3         technology;

4    -    Using Nikoonahad's disclosures and consulting services for the purpose of

5         developing products that would not require the payment of royalties under the

6         Agreement;

7    -    Refusing to perform the  dispute resolution provision;

8    -    Retaining control over Nikoonahad's intellectual property after terminating the

9         Agreement to keep it from him.[3]

10   Complaint, ¶¶ 11-12, p. 3:21-4:11.

11        Rudolph argues the allegations are illogical because it paid $100,000 to get access to and

12   evaluate the technology, but New Jersey law does not require plaintiff to make his proof of

13   defendant's motive in the complaint.   The case of *Brunswick Hills Racquet Club, Inc. v. Route*

14   *18 Shopping Center Associates*, 182 N.J. 210, cited by defendant, is instructive.  In that case, a

15   commercial landlord delayed and evaded its tenant's efforts to exercise an option to purchase

16   the leased property until the time for the tenant to make a payment to secure the option expired.

17   Then, the landlord informed the tenant the option was void. The Court made several

18   observations pertinent to Rudolph's argument that Nikoonahad's complaint does not allege bad

19   faith.

20        We cannot catalogue the myriad forms of conduct that may constitute a violation
21        of the covenant of good faith and fair dealing. Each case is fact-sensitive. This
          Court, however, has addressed the covenant in a number of different settings.
22        *See, e.g.*, *Wilson*, *supra*, 168 N.J. at 241, 244 (applying covenant to contract
          granting defendant unilateral authority to set and change prices); *Sons of*
23

24   _____
     [3] Rudolph makes the rather disingenuous claim that it does not know how Nikoonahad's
25   intellectual property could be retained.  In fact, Rudolph does know.  Pursuant to the contract
     Rudolph took possession and control of Nikoonahad's pending patent application after which
26   Rudolph's lawyer became the sole point of contact and the only one authorized to deal with the
     USPTO on matters regarding the application.  When Rudolph terminated the contract, it retained
27   control over the application and used it to conceal from Nikoonahad the fact that the USPTO
     issued a preliminary rejection of the application.  These facts are alleged in detail in
28   Nikoonahad's third claim for breach of fiduciary duty.

1
2
3
4
5
6
7
8
9

> *Thunder*, *supra*, 148 N.J. at 398, 425 (applying covenant in case involving
> defendant's termination of contract that denied plaintiff its "reasonable
> expectations and right to receive the fruits of the contract"); *Bak-A-Lum Corp. v.*
> *Alcoa Building Prods.*, 69 N.J. 123, 126-27, 129-30 (1976) (applying covenant to
> termination of at-will exclusive distributorship in which defendant intentionally
> misled and caused harm to plaintiff). Although those cases rest on facts different
> from those presented here, they yield a few salient principles relevant to our
> analysis. A defendant may be liable for a breach of the covenant of good faith
> and fair dealing even if it does not "violat[e] an express term of a contract." *Sons*
> *of Thunder*, *supra*, 148 N.J. at 423. A plaintiff may be entitled to relief under the
> covenant if its reasonable expectations are destroyed when a defendant acts with
> ill motives and without any legitimate purpose. *Wilson*, *supra*, 168 N.J. at 251.
> Moreover, a plaintiff may get relief if it relies to its detriment on a defendant's
> intentional misleading assertions. *Bak-A-Lum*, *supra*, 69 N.J. at 129-30.

10
11

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Associates*,
*supra*, at pp. 225-226.

12
13
14
15
16
17
18
19
20
21
22

Rudolph mislead Nikoonahad to believe it was going to develop products using his technology, as a result of which Nikoonahad entered into an exclusive license agreement that precluded him from marketing or selling it to anyone else.  By tying up the technology, Rudolph kept both the technology and Nikoonahad's expertise out of competitors' hands.  By controlling the technology, Rudolph had 18 months to find ways to avoid infringing it while retaining the option to buy it if none could be found.  Like the landlord's conduct in the *Brunswick Hills* case, Rudolph's evasion and avoidance of using Nikoonahad's consulting services to assist in product development and its evasion and avoidance of communicating with him to prosecute the patent application show ill motive.  Rudolph's concealment of the USPTO action on the patent application shows ill motive.  Rudolph's refusal to participate in contractually required mediation also shows ill motive.

23
24
25
26
27
28

Rudolph wants to argue evidence, but a motion to dismiss is not the time:

> In the final analysis, bad faith must be judged not only in light of the proofs
> regarding the defendant's state of mind but also in the context from which the
> claim arose. The Court in *Wilson* coupled the element of bad faith with a
> requirement that the plaintiff demonstrate a violation of "any commercially
> reasonable standard." 168 N.J. at 253. Accordingly, this element may be
> determined, at least in part, by the nature of the parties' undertaking and the
> standards applicable to the business or industry in which they have engaged.
> Ultimately, however, the presence of bad faith is to be found in the eye of the

1
2
3

> beholder or, more to the point, in the eye of the trier of fact. Any attempt to
> provide greater definition is to expect some "delusive exactness" which, as
> Justice Holmes said, is "a source of fallacy throughout the law." *Truax v.*
> *Corrigan*, 257 U.S. 312, 342, 42 S. Ct. 124, 133, 66 L. Ed. 254, 267 (1921)
> (dissenting opinion).

4

*Seidenberg v. Summit Bank*, 348 N.J.Super 243, 262-263 (2002).

5
6
7
8
9
10
11
12

For purposes of this motion, it is enough that the complaint contains a factual basis supporting the claim of bad faith and that it does. The only other explanation for Rudolph's conduct – (1) refusing to use Nikoonahad's services to develop products or processes from the technology, (2) refusing to communicate with Nikoonahad regarding his patent application, (3) refusing to make any effort to use the technology in any of its products or processes, (4) refusing to inform Nikoonahad that the USPTO had rejected his patent application, and (5) refusing to participate in contractually required mediation – is that Rudolph never intended to perform the Agreement.

13
14

### D. The Third Cause of Action States Facts Sufficient to Constitute a Claim for Relief

15
16
17
18
19

While Rudolph discusses at some length whether a fiduciary duty exists, Rudolph concedes for purposes of this motion that the issue need not be resolved. Specifically, Rudolph states: "The Court need not reach these questions in deciding the current motion." Given Rudolph's argument, Nikoonahad will address only Rudolph's claim that Nikoonahad suffered no harm.

20
21
22
23

In response to the unequivocal allegation in the complaint that Nikoonahad has sustained monetary loss and harm through Rudolph's breach of its fiduciary duty (Complaint, ¶ 24), Rudolph pursues an argument based upon the procedures of the U.S. Patent and Trademark Office. Nikoonahad submits such an argument is improper on a motion to dismiss.[4]

24
25
26
27
28

---

[4] Nevertheless, the USPTO Office Action reflects a statutory period of three months to reply, with the possibility of an extension to reply up to six months after the mailing date. Defendant's conduct precluded plaintiff from effectively responding, thereby impairing the application. While the amount of Nikoonahad's damages may be unknown presently, the fact that he has sustained a loss, harm or damage is established.

As argued above, this Court must accept as true all material allegations in the complaint as well as all reasonable inferences to be drawn from them and plaintiff's ability to prove his allegations is generally of no concern in ruling on a motion because the consideration is not whether plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims.  *Pareto v. F.D.I.C.*, *supra; Nami v. Fauver, supra.*

### E.  The Fourth Cause of Action States Facts Sufficient to Constitute a Claim for Relief

#### 1.  The Complaint Alleges Sufficient Facts to Support the Allegation of Rudolph's Lack of Intent to Perform

Rudolph argues that Nikoonahad has failed to plead facts sufficient to meet the standard of Rule 9(b).

The purpose of Rule 9 is to identify the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th. Cir. 1989).  The allegations need to be specific enough to give the defendant notice of the particular misconduct which is alleged to constitute the fraud so that the defendant can defend against the charge and not just deny it has done anything wrong.  *Semegen v. Weidner*, 788 F.2d 727, 731 (9th. Cir. 1985).

Here the factual allegations identify the circumstances constituting fraud so Rudolph can prepare an adequate answer from the allegations and defend against the charge.  The Fourth Cause of Action incorporates by reference paragraphs 1-13, 16-18 and 20-25 of the complaint. In summary, Rudolph entered into the contract not for the purpose of developing a product using Nikoonahad's intellectual property, but instead entered into the contract to obtain that intellectual property for its own use without having to pay Nikoonahad anything beyond the initial payment required by the Agreement.

#### 2.  The Promises Alleged in the Complaint Are Not Inconsistent With the Agreement.

Rudolph argues, once again, that it had no obligation under the terms of the Agreement to do anything after paying the initial $100,000:

"As explained above, the Agreement imposed no obligation on Rudolph to develop any products."

(Rudolph Memorandum P. 22:24-25).

The interaction between the parties leading up to the time of the contract and the Agreement itself indicate the purpose of the business relationship was to develop product using Nikoonahad's intellectual property. Nikoonahad would not have entered into the Agreement if he had known that Rudolph's true intention was to do nothing with his intellectual property after paying the initial $100,000 payment and tying up that intellectual property for a period of eighteen months so that Nikoonahad could not exploit that intellectual property elsewhere. Nikoonahad was defrauded, and the Fourth Cause of Action properly alleges that fraud.

Defendant's argument that a promise to develop product is inconsistent with the express terms of the agreement is off the mark. As discussed above the Agreement afforded Rudolph not one, but two opportunities to back out of the contract before undertaking product development. Rudolph did not avail itself of either opportunity and it is clear from the royalty provisions and the absence of any language that the contract was merely to allow evaluation of Nikoonahad's technology and nothing more as Rudolph now contends. The fact of the matter is that Rudolph promised to develop product using Nikoonahad's technology. Nikoonahad, therefore, was entirely justified in relying on Rudolph's promises to do so.

## V.   CONCLUSION.

Rudolph's motion should be denied in its entirety. However, if any portion of the motion is granted, Nikoonahad requests leave to amend his complaint.

DATED:  June  27, 2008          _____
                                ARDELL JOHNSON,
                                Attorney for Plaintiff MEHRDAD NIKOONAHAD