1  KEITH E. EGGLETON, State Bar No. 159842
   RODNEY G. STRICKLAND, State Bar No. 161934
2  ANTHONY J WEIBELL, State Bar No. 238850
   WILSON SONSINI GOODRICH & ROSATI
3  Professional Corporation
   650 Page Mill Road
4  Palo Alto, CA 94304-1050
   Telephone: (650) 493-9300
5  Facsimile: (650) 565-5100
   Email: keggleton@wsgr.com;
6  rstrickland@wsgr.com; aweibell@wsgr.com

7  Attorneys for Defendant
   RUDOLPH TECHNOLOGIES, INC.
8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                          SAN JOSE DIVISION

12 MEHRDAD NIKOONAHAD,              )   CASE NO.: C 08-2290 JF
                                    )
13         Plaintiff,               )   **RUDOLPH TECHNOLOGIES,**
                                    )   **INC.'S REPLY IN SUPPORT OF ITS**
14      v.                          )   **MOTION TO DISMISS**
                                    )
15 RUDOLPH TECHNOLOGIES, INC. and   )   Date:  July 25, 2008
   DOES 1-25, inclusive,            )   Time:  9:00 AM
16                                  )   Dept:  3
           Defendants.              )   Judge: Hon. Jeremy Fogel
17 _____ )

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. THE SUPREME COURT HAS REJECTED THE LEGAL STANDARD UPON WHICH PLAINTIFF'S OPPOSITION DEPENDS. .......................................................... 1

III. THE FIRST CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD A BREACH OF CONTRACT. ........................... 3

IV. THE SECOND CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD A BREACH OF THE IMPLIED COVENANT. ..................................................................................................................... 5

    A. Plaintiff Cannot Use the Implied Covenant to Rewrite the Agreement With a "Best Efforts" Obligation to Which Rudolph Never Agreed. .............................. 5

    B. The Agreement's Unambiguous Terms Contemplated that Rudolph Might Not Produce Any Royalty-Bearing Products. .......................................................... 7

    C. Plaintiff's Accusations of Bad Faith Fail to Pass the *Twombly* Standard Because They Are Not Supported By Sufficient Factual Allegations. .................. 9

V. THE THIRD CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD A BREACH OF A FIDUCIARY DUTY OR DAMAGES ................................................................................................................ 11

VI. THE FOURTH CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD PROMISSORY FRAUD. ............................... 12

    A. A Claim of Promissory Fraud Cannot be Based Upon an Alleged Promise Not Found in the Parties' Written Integrated Agreement. .................................... 12

    B. Plaintiff Fails to Identify Facts Showing that Rudolph Harbored an Intention to Break Its Alleged Promises at the Time the Contract was Formed. ................................................................................................................ 13

VII. CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arlaine & Gina Rockey, Inc. v. Cordis Corp.*, No. 02-22555, 2004 WL 5504978
  (S.D. Fla. Jan. 5, 2004) .................................................................................................... 4, 5

*Ass'n Group Life, Inc. v. Catholic War Veterans*, 293 A.2d 382 (N.J. 1972) ............................... 8

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ............................................................ passim

*Brunswick Hills Racquet Club, Inc., v. Route 18 Shopping Ctr. Assocs., LLP*,
  864 A.2d 387 (N.J. 2005) ................................................................................................ 6, 7, 9

*Cambridge Mgmt. Group, LLC v. Robert A. Kosseff & Assocs., P.C.*,
  No. 05-3402, 2007 WL 2084895 (D.N.J. July 18, 2007) ........................................................ 5

*Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336 (2004) ............................................................... 13

*Comerica Bank v. McDonald*, No. C -06-03735, 2006 WL 3365599
  (N.D. Cal. Nov. 17, 2006) ...................................................................................................... 14

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................................ 1

*De La Cruz v. Tormey*, 582 F.2d 45 (9th Cir. 1978) ...................................................................... 2

*Edwards v. Prudential Prop. & Cas. Co.*, 814 A.2d 1115
  (N.J. Super. Ct. App. Div. 2003) ............................................................................................. 9

*DiCarlo v. St. Mary Hosp.*, – F.3d –, 2008 WL 2498106 (3d Cir. June 24, 2008) ....................... 6

*Fleming Co. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837 (D.N.J. 1995) .......................... 6

*Gen-Probe Inc. v. Ctr. for Neurologic Study*, 853 F. Supp. 1215 (S.D. Cal. 1993) .................... 12

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) ......................................................... 2

*Glenfed Fin. Corp. v. Penick Corp.*, 647 A.2d 852 (N.J. Super. Ct. App. Div. 1994) ................... 7

*Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615 (N.D. Cal. 2002) ...................................................... 14, 15

*Incyte Pharms., Inc. v. Affymetrix, Inc.*, 131 F. Supp. 2d 1154 (N.D. Cal. 2000) ........................ 12

*Intel Corp. v. Lehman*, No. C 97-20046, 1997 WL 930014 (N.D. Cal. June 3, 1997) ................ 12

*Kas Oriental Rugs, Inc. v. Ellman*, 926 A.2d 387 (N.J. Super. Ct. App. Div. 2007) .................... 8

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ............................................................ 12

*Magpali v. Farmers Group, Inc.*, 48 Cal. App. 4th 471 (1996) ................................................... 15

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989) .................................... 15

*Nami v. Fauver*, 82 F.3d 63 (3d Cir. 1996) ................................................................................2

*Permanence Corp. v. Kennametal, Inc.*, 908 F.2d 98 (6th Cir. 1990) ..............................4, 7, 8, 14

*Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, No. 05-8493,
    2007 WL 4302723 (C.D. Cal. July 9, 2007) .................................................................12

*Semegen v. Weidner*, 788 F.2d 727 (9th Cir. 1985) ...................................................................15

*Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799 (1990)................................................13

*Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30-31 (1985) ............................................................15

*United States v. Woods*, 335 F.3d 993 (9th Cir. 2003).................................................................12

*Wade v. Kessler Inst.*, 798 A.2d 1251 (N.J. 2002) ..................................................................5, 9

*Wilson v. Amerada Hess Corp.*, 773 A.2d 1121 (N.J. 2001) .......................................................9

*Woods Corp. Assocs. v. Signet Star Holdings, Inc.*, 910 F. Supp. 1019
    (D.N.J. 1995) ...............................................................................................................7, 8

**STATUTES**

44 U.S.C. § 1507 ........................................................................................................................12

**RULES**

Fed. R. Civ. P. 8(a).......................................................................................................................2

## I. INTRODUCTION

Plaintiff's opposition memorandum confirms that this lawsuit is based upon contractual obligations that Plaintiff *wishes* he could find in the parties' agreement, not upon the agreement's *actual* contractual obligations. Specifically, the opposition demonstrates that Plaintiff's claims rise or fall on the allegation that Rudolph was obligated to "develop" the technology that it licensed from Plaintiff. The parties' written integrated agreement, however, contains no such obligation. The agreement reflects that Plaintiff received $100,000 and, in exchange, Rudolph received a license to Plaintiff's technology. While the parties obviously contemplated that Plaintiff could receive royalty payments *if* products were developed, nowhere does the agreement obligate Rudolph to develop products or to use "best efforts" (as Plaintiff alleges) to develop products.

Plaintiff may now regret the deal that he struck two years ago – indeed, he claims that he would not have entered into the agreement had he known that Rudolph would not develop royalty-bearing products – but "licensor's remorse" is not grounds for subjecting Rudolph to contract and tort litigation. Simply put, Rudolph can only be held to the terms of the contract to which the parties' agreed – not the terms that Plaintiff now wishes he had negotiated. Rudolph did not breach a contract by not performing an obligation that is not in the contract. Rudolph did not commit "promissory fraud" by not performing an obligation that is not in the contract. For these and the other reasons set forth below, the Complaint should be dismissed.

## II. THE SUPREME COURT HAS REJECTED THE LEGAL STANDARD UPON WHICH PLAINTIFF'S OPPOSITION DEPENDS.

Plaintiff's opposition to Rudolph's motion to dismiss relies on a legal standard that was recently rejected by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ("*Twombly*"). Ignoring *Twombly*, Plaintiff argues:

> [T]he court must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy. Unless the answer is unequivocally "no," the court must deny the motion.

Pltf. Opp. at 4-5. As support for his "unequivocally 'no'" test, Plaintiff cites several older circuit opinions that were based upon language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), in

1  which the *Conley* Court stated "that a complaint should not be dismissed for failure to state a
2  claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his
3  claim which would entitle him to relief." *See* Pltf. Opp. at 4-5 (citing *De La Cruz v. Tormey*, 582
4  F.2d 45, 48 (9th Cir. 1978); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997);
5  *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)).

6  In *Twombly*, however, the Supreme Court expressly rejected the "no set of facts"
7  standard upon which Plaintiff relies: "*Conley*'s 'no set of facts' language has been questioned,
8  criticized, and explained away long enough. . . . [T]his famous observation has earned its
9  retirement. The phrase is best forgotten . . . ." *Twombly*, 127 S. Ct. at 1969. The Supreme Court
10 held that, contrary to the now-rejected *Conley* standard, "a plaintiff's obligation to provide the
11 'grounds' of his 'entitle[ment] to relief' requires *more than labels and conclusions*, and a
12 formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (quoting
13 Fed. R. Civ. P. 8(a)) (emphasis added) (citations omitted). It is not enough for the plaintiff to
14 allege a theory that is merely "conceivable" from the facts alleged. *Twombly*, 127 S. Ct. at 1974.
15 The plaintiff instead must provide "enough facts to state a claim to relief that is *plausible on its*
16 *face*" and, if he does not do so, the "complaint must be dismissed." *Id.* ("Because the plaintiffs
17 here have not nudged their claims across the line from conceivable to plausible, their complaint
18 must be dismissed.") (emphasis added).

19 Here, Plaintiff's claims fail to meet the *Twombly* standard because they are not "plausible
20 on [their] face" in light of the unambiguous terms of the parties' contract attached to the
21 complaint. Specifically, each of Plaintiff's claims is based upon the allegation that Rudolph
22 broke an alleged promise "to develop products using Nikoonahad's technology and to prosecute
23 his patent application." *See* Pltf. Opp. at 3-4. The parties' written integrated agreement,
24 however, contains no language imposing upon Rudolph an obligation to develop Plaintiff's
25 technology, and the judicially noticeable regulations governing Patent Office procedure show
26 that Plaintiff has suffered no damage from the manner in which his patent application has been
27 prosecuted. *See infra* Sections III-VI. Thus, the complaint's mere "labels and conclusions"
28 accusing Rudolph of breaking alleged promises to Plaintiff fail "to raise a reasonable expectation

that discovery will reveal evidence of [any alleged wrongful conduct]," as required by *Twombly*, 127 S. Ct. at 1965.

Further ignoring *Twombly*, Plaintiff repeatedly argues that his claims should survive the motion to dismiss because his "ability to prove his allegations is generally of no concern" at this stage of the proceedings, Pltf. Opp. at 4, 15, and that "it is enough that the complaint contains a factual basis supporting the claim," *id.* at 14. These arguments ignore the Supreme Court's express language in *Twombly*, which requires Plaintiff to support his claims with "enough fact" to provide a "plausible" factual basis, not merely a "conceivable" factual basis. *Twombly*, 127 S. Ct. at 1965, 1974. While Plaintiff may be entitled to have his factual allegations taken as true for purposes of a motion to dismiss, he is not entitled to make them up out of whole cloth without regard to the actual language of the parties' contract and matters subject to judicial notice.

### III. THE FIRST CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD A BREACH OF CONTRACT.

Plaintiff accuses Rudolph of six separate acts and omissions that allegedly breached the parties' contract. In its motion to dismiss, Rudolph explained in detail why none of these six alleged acts could constitute a breach of contract. *See* Rudolph's Motion to Dismiss ("Mot.") at 6-7. In his response, Plaintiff abandoned five of these allegations.[1] The one allegation Plaintiff chose to defend -- that "Rudolph breached the contract because it never attempted to do any product development using the technology" (*see* Pltf. Opp. at 5) -- is not based on the language of the contract and therefore cannot support a breach of contract claim.

---

[1] Specifically, Plaintiff has not responded to Rudolph's demonstration in the opening brief that Rudolph's alleged (1) failure to make installment payments "in a timely manner," (2) failure to "utilize Nikoonahad's consulting services for developing products incorporating the licensed technology," (3) failure to "provide information to Nikoonahad concerning the development of products and the prosecution of his patent application," (4) utilization of Plaintiff's consulting services to develop non-royalty-bearing products, and (5) retention of Plaintiff's "intellectual property for its own benefit" cannot constitute a breach of contract. Thus, these allegations should be dismissed with prejudice. As mentioned in Rudolph's opening brief, Rudolph has not moved to dismiss the breach of contract claim with respect to the single allegation that Rudolph "refused to perform the dispute resolution provision" of the parties' agreement. *See* Mot. at 7 n.5. Rudolph anticipates that it will file a motion for summary judgment on this remaining contract issue because the Complaint does not allege all of the relevant facts concerning this claim, including Plaintiff's rejection of Rudolph's offer to mediate.

Plaintiff has failed to identify a single term of the parties' agreement that has been breached by Rudolph's alleged failure to develop royalty-bearing products. In an effort to locate the alleged promise to develop royalty-bearing products, Plaintiff cites five different sections of the agreement, *see* Pltf. Opp. at 1, 5-6 (citing Agmt. §§ 1.4 (defining "Licensed Subject Matter"), 2.1 (license grant), 4.1 (listing plaintiff's consulting obligations), 5.1 (describing one-time license fee), 5.2 (describing one-time fee for exercising First Option)). None of these sections contains any promise to develop products.

Plaintiff appears to ultimately rely on the license grant provision as the point in the agreement where, allegedly, "Rudolph *agreed* to develop, test, manufacture, have manufactured, use, sell or offer for sale the Licensed Subject Matter." *See* Pltf. Opp. at 1 (emphasis added). However, the language of the license grant says no such thing. The license grant is expressly clear that the only consideration being offered in exchange for the license is the $100,000 up-front fee that Rudolph paid to Plaintiff:

> 2.1. Subject to the terms and conditions of this Agreement and *in exchange for the fee set forth in paragraph 5.1. l herein below*, Licensor hereby grants to Licensee the exclusive, nontransferable, non sub-licensable right and license to develop, test, manufacture, have manufactured for Licensee, use, sell, or offer for sale the Licensed Subject Matter (the "Development License") for a period of eighteen (18) months from the effective date of this Agreement.

Agmt. ¶ 2.1 (emphasis added). Tellingly, Plaintiff uses ellipses to omit the "in exchange for the fee set forth in paragraph 5.1 l herein below" language when he quotes the license grant in his opposition memorandum. *See* Pltf. Opp. at 1.

Significantly, courts recognize that a patent license grant does not contractually obligate the licensee (here, Rudolph) to develop patented products. *See, e.g.*, *Permanence Corp. v. Kennametal, Inc.*, 908 F.2d 98, 99 (6th Cir. 1990) (recognizing that exclusive patent license agreement contained no express obligation to exploit the patent license); *Arlaine & Gina Rockey, Inc. v. Cordis Corp.*, No. 02-22555, 2004 WL 5504978, at *6, 49 (S.D. Fla. Jan. 5, 2004) (holding that "there is no express contractual provision obligating [defendant] to develop a royalty-generating product" in patent license agreement that "granted [defendant] an 'exclusive world-wide license to manufacture, have manufactured, use and sell devices or products

incorporating, in whole or in part any and all of the [licensed subject matter]'").[2]  Therefore, because the agreement imposed no obligation on Rudolph to produce royalty-bearing products, Plaintiff's breach of contract claim should be dismissed.

## IV.  THE SECOND CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD A BREACH OF THE IMPLIED COVENANT.

Plaintiff's opposition fails to show why his implied covenant claim should not be dismissed for at least three reasons:  (1) Plaintiff cannot use the implied covenant to rewrite the parties' agreement to impose a "best efforts" obligation to which Rudolph never agreed; (2) the agreement unambiguously contemplated that Rudolph might not develop any royalty-bearing products before its license expired; and (3) Plaintiff's accusation that Rudolph acted with ill motive, a required element of an implied covenant claim under New Jersey law, fails to satisfy *Twombly*'s pleading requirements.[3]

### A.  Plaintiff Cannot Use the Implied Covenant to Rewrite the Agreement With a "Best Efforts" Obligation to Which Rudolph Never Agreed.

Plaintiff's opposition distorts Rudolph's motion to dismiss and attempts to dodge a major flaw in the complaint regarding the obligations imposed by the implied covenant of good faith

---

[2] In his opposition, Plaintiff disclaims any allegation that an obligation to develop royalty-bearing products should be implied into the agreement. *See* Pltf. Opp. at 6 ("Nothing needs to be implied."). Even so, as explained in Rudolph's opening brief (and not addressed in Plaintiff's opposition), courts will not imply an obligation to develop royalty-bearing products where the license agreement includes a substantial up-front license fee and an integration clause. *See* Mot. at 9-10 (citing cases); *see also Arlaine & Gina Rockeyi*, 2004 WL 5504978, at *49 ("where a license agreement contains a merger or integration clause and requires a substantial advance royalty payment, courts have consistently refused to read an 'implied duty to exploit' into the agreement").

[3] As explained in Rudolph's opening brief, the implied covenant claim should also be dismissed because it is redundant of the breach of contract claim, in that both claims are based on the same alleged conduct. *See* Mot. at 13-14; *Wade v. Kessler Inst.*, 798 A.2d 1251, 1261 (N.J. 2002) (it would be erroneous to suggest "that in breaching a literal term of the [agreement], defendant also could be found separately liable for breaching the implied covenant of good faith and fair dealing when the two asserted breaches basically rest on the same conduct."); *Cambridge Mgmt. Group, LLC v. Robert A. Kosseff & Assocs., P.C.*, No. 05-3402, 2007 WL 2084895, at *4-5 (D.N.J. July 18, 2007) ("Court shall dismiss [claim for breach of the implied covenant] as redundant" and "duplicative" where claim was based "on the same conduct which constitutes [plaintiff's] breach of contract claim").

and fair dealing. In its opening brief, Rudolph demonstrated that "Plaintiff's implied covenant claim should be dismissed because it is based upon an implied covenant that does not exist under New Jersey (or California) law: the alleged 'implied covenant of good faith and fair dealing that required each party to use his/its *best efforts* to perform the Agreement.'" Mot. at 12 (quoting Compl. ¶ 15) (emphasis added). The flaw in the complaint's allegations is that "[u]nder New Jersey law, the covenant of good faith and fair dealing implied in every contract has nothing to do with 'best efforts,' and no New Jersey court has ever attached the high standard of affirmative 'best efforts' to the implied covenant of good faith and fair dealing." *Id.* In an apparent attempt to avoid drawing attention to this flaw, Plaintiff mischaracterizes Rudolph's opening brief. *See* Pltf. Opp. at 7 (quoting only the first half of a sentence from Rudolph's brief and suggesting that Rudolph believes there is *no* implied covenant under New Jersey law).

While Plaintiff continues to assert, incorrectly, that the implied covenant required Rudolph to use its "best efforts to perform the Agreement," Pltf. Opp. at 7-8, Plaintiff fails to cite a single case holding that the implied covenant requires a party to use "best efforts" to perform the contract. Similarly, Plaintiff fails to cite a single case allowing a plaintiff to use the implied covenant to rewrite the express obligations in the parties' agreement to include a best efforts obligation to which the defendant never agreed. Indeed, the law is to the contrary. Under New Jersey law, "the duty of good faith and fair dealing cannot 'alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement.'" *DiCarlo v. St. Mary Hosp.*, – F.3d –, 2008 WL 2498106, at *9 (3d Cir. June 24, 2008) (quoting *Fleming Co. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 846 (D.N.J. 1995)); *see also Brunswick Hills Racquet Club, Inc., v. Route 18 Shopping Ctr. Assocs., LLP*, 864 A.2d 387, 399 (N.J. 2005) (implied covenant should not be construed so broadly that it imposes "unintended obligations upon parties" or "destroy[s] the mutual benefits created by legally binding agreements"); *Woods Corp. Assocs. v. Signet Star Holdings, Inc.*, 910 F. Supp. 1019, 1034 (D.N.J. 1995) ("a [party's] clear duty to act in good faith does not encompass 'compromising its contractual rights in order to aid [the other party]'") (quoting *Glenfed Fin. Corp. v. Penick Corp.*, 647 A.2d 852 (N.J. Super. Ct. App. Div. 1994)).

1   Contrary to Plaintiff's unsupported allegations, courts recognize that a "best efforts"
2   obligation should *not* be imposed unless a patent licensee has expressly agreed to use its "best
3   efforts" to develop an inventor's technology (which Rudolph did not do).  *See, e.g.*, *Permanence*
4   *Corp.*, 908 F.2d at 103 ("when an inventor grants a license to patented technology, the
5   application of which is unknown, a commitment on the part of the licensee to devote best efforts
6   to the development of the technology is a substantial commitment which should *not* be
7   automatically inferred") (emphasis added).  Because an obligation to use "best efforts" is a
8   "substantial commitment," it will not be implied; rather, a "best efforts" obligation will only be
9   imposed if the licensor secures such an obligation in writing as part of the express terms of the
10  license agreement.  *See id.* ("if [plaintiff] wished to bind [defendant] to a best efforts
11  commitment in the circumstances of the present case, it was incumbent upon [plaintiff] to spell
12  out this obligation in the formal written agreement").  Plaintiff did not do so.  He cannot now
13  rewrite the express obligations in the parties' agreement to include a best efforts obligation to
14  which Rudolph never agreed.

### B. The Agreement's Unambiguous Terms Contemplated that Rudolph Might Not Produce Any Royalty-Bearing Products.

17  Plaintiff has failed to state a claim for breach of the implied covenant because the
18  agreement's unambiguous terms contemplated that Rudolph might not develop any royalty-
19  bearing products before its license expired.
20  "A plaintiff may be entitled to relief under the [implied] covenant if its *reasonable*
21  *expectations* are destroyed when a defendant acts with ill motives and without any legitimate
22  purpose." *Brunswick Hills Racquet Club*, 864 A.2d at 396 (emphasis added).  However, to state
23  an independent claim for breach of the implied covenant, the factual allegations of the complaint
24  must show that "a party to the contract engaged in some behavior '*not contemplated by the spirit*
25  *of the contract* and [that] fell short of fair dealing.'" *Woods Corp. Assocs.*, 910 F. Supp. at 1034
26  (quoting *Ass'n Group Life, Inc. v. Catholic War Veterans*, 293 A.2d 382 (N.J. 1972)) (emphasis
27  added).  Accordingly, "[t]he law continues to prohibit the enforcement of an implied contract or

1  an implied provision that *conflicts* or is *inconsistent* with the parties' express contract." *Kas*
2  *Oriental Rugs, Inc. v. Ellman*, 926 A.2d 387, 393 (N.J. Super. Ct. App. Div. 2007).
3        Here, Plaintiff argues that the parties had an "expectation that Rudolph was going to
4  develop products using Nikoonahad's technology." Pltf. Opp. at 9. But Plaintiff does not -- and
5  cannot -- cite any section of the parties' written integrated agreement consistent with the alleged
6  expectation that royalty-bearing products *would* be developed, as opposed to the expectation that
7  such products *could but might not* be developed. Indeed, any expectation that royalty-bearing
8  products were guaranteed would have been inconsistent with the express terms of the agreement.
9  In particular, Plaintiff required Rudolph to pay a $100,000 upfront licensing fee. *Permanence*
10 *Corp.*, 908 F.2d at 102 ("Courts have held that by imposing a substantial minimum or advance
11 royalty payment, the licensor, in lieu of obtaining an express agreement to use best efforts, has
12 protected himself against the possibility that the licensee will do nothing."). Likewise, other
13 sections of the parties' agreement show that the parties expected the possibility that royalty-
14 bearing products might never be produced. *See, e.g.*, Agmt. §§ 10.1 ("Where no Products or
15 Processes sold by the Licensee are covered by any claims of the IP Rights, no royalties will be
16 due . . ."), 5.3.3.1 ("Regarding those IP Rights listed in Exhibit A as of the effective date of this
17 Agreement, no time limit with respect to commercialization of the IP Rights shall apply.").
18 Thus, the "spirit" of the parties' contract (pursuant to which Rudolph paid a substantial upfront
19 licensing fee) necessarily "contemplated" the possibility that no licensed products would ever be
20 developed by Rudolph.
21       Moreover, each section of the parties' agreement cited by Plaintiff, *see* Pltf. Opp. at 9-10,
22 is entirely consistent with the reasonable expectation that the development of products was only
23 a possibility, not a guarantee. Section 2.1 of the agreement, the license grant itself, only grants
24 Rudolph the right, not the obligation, to develop royalty-bearing products. *See supra* Section III.
25 Likewise, Sections 5.1.1.1 and 5.1.2 of the agreement granted Rudolph the right to back out of
26 the agreement at various stages prior to paying the full $100,000. These sections contain no
27 language imposing a "point of no return" after which Rudolph would be obligated to develop
28 royalty-bearing products. Section 5.3.1, which provides that "[r]oyalties shall accrue when

Products and/or Processes . . . are first shipped, or otherwise transferred pursuant to a sale," is also consistent with the expectation that royalty-bearing products might never be sold, and thus there would be no reason to pay royalties until a sale actually occurred, rather than on a periodic basis.  The same is true of Section 8.1, which provides that "[i]f during a quarter there are no sales, Licensee shall provide a quarterly report starting clearly that no sales have been made during the quarter in question."  Contrary to Plaintiff's argument, *see* Pltf. Opp. at 9-10, the fact that each of these sections reflects the parties' foresight that royalty-bearing products *might* be developed does not compel the conclusion that Rudolph was *obligated* to develop products.

Consequently, Plaintiff's implied covenant claim should be dismissed because any "expectation that Rudolph was going to develop products using Nikoonahad's technology," Pltf. Opp. at 9, was inconsistent with the express terms of the agreement.  *Edwards v. Prudential Prop. & Cas. Co.*, 814 A.2d 1115, 1119-21 (N.J. Super. Ct. App. Div. 2003) (affirming dismissal of breach of implied covenant claim where alleged wrongful conduct "can hardly be deemed a breach of an implied covenant of good faith and fair dealing").

### C. Plaintiff's Accusations of Bad Faith Fail to Pass the *Twombly* Standard Because They Are Not Supported By Sufficient Factual Allegations.

As explained above, even if Plaintiff's "reasonable expectations" are not met, a claim for breach of the implied covenant still cannot be maintained in the absence of plausible factual allegations demonstrating that the defendant acted "with ill motives and without any legitimate purpose."  *Brunswick Hills Racquet Club*, 864 A.2d at 396; *see also Wade*, 798 A.2d at 1260 ("We have cautioned, however, that 'an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive.'") (quoting *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121 (N.J. 2001)).

Here, Plaintiff accuses Rudolph of acting in bad faith "to retard and/or avoid the use of the licensed technology" but offers no factual allegations demonstrating that Rudolph was acting with "ill motive" rather than with a "legitimate purpose."  Compl. ¶ 17.  To the contrary, both the facts alleged in the complaint and the parties' agreement reflect that Plaintiff's claims of ill motive are illogical given that Rudolph (a) retained Plaintiff to provide consulting services long

1 before the parties ever entered into the agreement at issue, *id.* ¶¶ 5-6, (b) paid $100,000 up front
2 to obtain a license to Plaintiff's technology without any assurances that the technology would be
3 profitable, Agmt. § 5.1.1, (c) paid Plaintiff to provide hundreds of hours of consulting services
4 during the term of the license, Compl. ¶ 11, and (d) paid for the prosecution of Plaintiff's patent
5 application even after Rudolph was no longer licensed to use that technology, *id.* ¶ 23.

6 In his opposition, Plaintiff does not dispute that these facts render his accusations of bad
7 faith "illogical." He argues, however, that the law "does not require plaintiff to make his proof
8 of defendant's motive in the complaint." Pltf. Opp. at 12. While it is true that Plaintiff does not
9 have to offer "proof" at this stage, he is required to provide "*plausible grounds*" to infer the truth
10 of his claims and "enough fact to raise a *reasonable expectation* that discovery will reveal
11 evidence of [the alleged wrongful conduct]." *Twombly*, 127 S. Ct. at 1965 (emphasis added).
12 Plaintiff has not alleged facts plausibly suggesting "ill motives" and therefore the Second Cause
13 of Action should be dismissed.

14 Plaintiff asserts three basic allegations that he argues form the "factual basis" supporting
15 his claim of bad faith: (1) Rudolph allegedly did not use Plaintiff's technology or his consulting
16 services to develop royalty-bearing products; (2) Rudolph allegedly did not communicate with
17 Plaintiff about his pending patent application or inform him of the Patent Office's non-final
18 rejection of his application; and (3) Rudolph allegedly refused to go to mediation when Plaintiff
19 complained that Rudolph was not making reasonable efforts to develop royalty-bearing products.
20 Pltf. Opp. at 14. None of these allegations, however, even if taken as true, plausibly suggest bad
21 faith or "raise a reasonable expectation that discovery will reveal evidence of [any wrongful
22 conduct]" on the part of Rudolph. First, the allegation that Rudolph did not use Plaintiff's
23 technology or his consulting services to develop royalty-bearing products does not plausibly
24 suggest bad faith because Rudolph had no express or implied obligation to do so. *See supra*
25 Section III; Mot. at 7-10. Second, the allegation that Rudolph allegedly did not communicate
26 with Plaintiff about his pending patent application or inform him of the Patent Office's non-final
27 rejection of his application does not plausibly suggest bad faith because the deadline to file a
28 response to the non-final rejection was still four months away at the time Plaintiff filed his

complaint. *See* Mot. at 17-19. Lastly, the allegation that Rudolph refused to go to mediation when Plaintiff complained about Rudolph's failure to develop royalty-bearing products does not plausibly suggest bad faith because Plaintiff does not allege that the parties were unable to settle the dispute through negotiation or that Plaintiff even attempted good faith negotiations before demanding mediation, as required by the contract. *See* Agmt. § 20.1 ("If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute *cannot be settled through negotiation*, the parties agree to [mediate the dispute].") (emphasis added).[4]

Because none of the above factual allegations contribute to the plausibility of Plaintiff's accusations of bad faith and ill motive, Plaintiff's claim of bad faith fails to satisfy the standard set forth in *Twombly* and should, therefore, be dismissed. *Twombly*, 127 S. Ct. at 1974.

## V.     THE THIRD CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD A BREACH OF A FIDUCIARY DUTY OR DAMAGES.

Plaintiff makes little effort to defend his breach of fiduciary duty claim relating to the prosecution of his patent application. *See* Pltf. Opp. at 14-15. Indeed, Plaintiff is compelled to acknowledge that the time to respond to the Patent Office's non-final rejection of Plaintiff's patent application was still four months away when he filed his complaint in this action. *See id.* at 14 n.4. Thus, Plaintiff cannot show damages, let alone a breach of fiduciary duty, because there has been no final rejection of his pending patent application, and the prosecution of this application was ongoing at the time Plaintiff filed his complaint (and remains ongoing).[5] Mot. at 18-19.

Plaintiff's sole argument to save his fiduciary duty claim is that, on a motion to dismiss, the Court should not be allowed to consider the Patent Office procedures as set forth in the

---

[4] Additionally, as stated above, *supra* at 3 n.1, and in Rudolph's opening brief, Mot. at 7 n.5, the complaint does not allege all of the relevant facts concerning the mediation issue, including Plaintiff's rejection of Rudolph's offer to mediate.

[5] For this reason, Plaintiff's bald assertion (relegated to a footnote in his opposition) that he has suffered "unknown" damages by being "precluded . . . from effectively responding" to the Patent Office's non-final rejection of his application, Pltf. Opp. at 14 n.4, lacks any factual support whatsoever and thus fails to satisfy the requirements of *Twombly*.

1  United States Code and the Code of Federal Regulations -- even if Plaintiff's allegations

2  contradict those procedures. Pltf. Opp. at 14-15. Plaintiff's argument is nonsense given that

3  courts are required to judicially notice such federal regulations, *see* 44 U.S.C. § 1507 ("contents

4  of the Federal Register *shall* be judicially noticed") (emphasis added) and *United States v.*

5  *Woods*, 335 F.3d 993, 1001 (9th Cir. 2003), and given that the consideration of matters of public

6  record subject to judicial notice does not convert a Rule 12 motion into one for summary

7  judgment, *see Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). For these reasons,

8  courts routinely consider the procedures of the Patent Office in ruling on a motion to dismiss.

9  *See, e.g.*, *Incyte Pharms., Inc. v. Affymetrix, Inc.*, 131 F. Supp. 2d 1154, 1156-57 (N.D. Cal.

10 2000) (considering Patent Office procedures in ruling on motion to dismiss); *Intel Corp. v.*

11 *Lehman*, No. C 97-20046, 1997 WL 930014, at *1-2 (N.D. Cal. June 3, 1997) (same); *Samsung*

12 *SDI Co. v. Matsushita Elec. Indus. Co.*, No. 05-8493, 2007 WL 4302723, at *1-2 (C.D. Cal. July

13 9, 2007) (same); *Gen-Probe Inc. v. Ctr. for Neurologic Study*, 853 F. Supp. 1215, 1219 (S.D.

14 Cal. 1993) (relying on patent regulations in C.F.R. to dismiss action).

15       Because the federal regulations governing Patent Office procedures show that Plaintiff's

16 patent application could not have been subject to a final rejection at the time he filed the

17 complaint, the breach of fiduciary duty claim should be dismissed.

18 **VI.  THE FOURTH CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD PROMISSORY FRAUD.**

19

20       Plaintiff's promissory fraud claim fails for two reasons: (1) the promise that Rudolph

21 allegedly failed to perform is not found in the parties' written integrated agreement and, in any

22 event, (2) Plaintiff has not pleaded facts reflecting that Rudolph did not intend to perform the

23 alleged promise at the time the contract was signed.

24       **A.  A Claim of Promissory Fraud Cannot be Based Upon an Alleged Promise Not Found in the Parties' Written Integrated Agreement.**

25

26       Plaintiff rests his promissory fraud claim upon the unsupported allegation that "Rudolph

27 promised to develop product using Nikoonahad's technology." Pltf. Opp. at 16. However, as

28 explained in Rudolph's opening brief and in this Reply, Plaintiff's complaint and opposition

memorandum point to no language in the parties' written integrated agreement wherein Rudolph made this alleged promise either expressly or impliedly. Mot. at 8-10, 14, 22-23; *supra* Section III. Nor can Plaintiff look outside the agreement for the alleged promise to develop products because promissory fraud claims cannot be premised on alleged prior or contemporaneous statements that are inconsistent with a written integrated agreement. *See Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 346 (2004) ("[O]ur courts have consistently rejected promissory fraud claims premised on prior or contemporaneous statements at variance with the terms of a written integrated agreement."); *Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990) ("[plaintiff's] alleged reliance on [defendant's] oral promises [were] simply not justifiable [where] the representations contradict[ed] the parties' integrated employment agreement"); *see also* Agmt. § 17.1 (contract "contains the entire Agreement between the Parties with respect to the subject matter hereof and that all prior representations, warranties, or agreements relating hereto have been merged into this document and are thus superseded in totality by this Agreement.")

Plaintiff argues that he "would not have entered into the Agreement if he had known that Rudolph's true intention was to do nothing with his intellectual property after paying the initial $100,000 payment," Pltf. Opp. at 16. But if Plaintiff truly wanted to obligate Rudolph to develop products, he should have said so in the integrated written contract. He did not. Likewise, if Plaintiff truly intended Rudolph to use its "best efforts" to develop royalty-bearing products, Plaintiff had the opportunity and the responsibility to negotiate for inclusion of such an obligation in the parties' contract. *Permanence Corp.*, 908 F.2d at 103 ("if [plaintiff] wished to bind [defendant] to a best efforts commitment in the circumstances of the present case, it was incumbent upon [plaintiff] to spell out this obligation in the formal written agreement"). He did not. Simply put, Plaintiff cannot have been defrauded by Rudolph's alleged non-performance of obligations that Plaintiff did not include in the contract he signed with Rudolph.

**B.    Plaintiff Fails to Identify Facts Showing that Rudolph Harbored an Intention to Break Its Alleged Promises at the Time the Contract was Formed.**

1    Plaintiff also has failed to allege facts showing that, at the time the contract was formed,
2 Rudolph did not intend to perform the alleged (but non-existent) promise to develop royalty-
3 bearing products. While given the opportunity in his opposition memorandum to identify such
4 factual allegations, Plaintiff merely states that "[t]he Fourth Cause of Action incorporates by
5 reference paragraphs 1-13, 16-18 and 20-25 of the complaint." Pltf. Opp. at 15. Setting aside
6 the fact that Plaintiff's lack of specificity reveals the weakness of his promissory fraud claim,
7 none of the paragraphs cited by Plaintiff contain factual allegations relating to Rudolph's intent
8 at the time the contract was formed. Plaintiff's inability to point to such facts is fatal to his
9 promissory fraud claim. *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002)
10 ("Although intent can be averred generally under Rule 9(b), a plaintiff must point to *facts* which
11 show that defendant harbored an intention not to be bound by terms of the contract at
12 formation."). Where a complaint merely alleges that "[defendant] had no intention to be bound
13 by the terms as agreed," the complaint has "failed to plead fraud with specificity as required by
14 Rule 9(b)." *Id.* (dismissing promissory fraud claim where plaintiff failed to "allege specific facts
15 from which a trier of fact could infer that defendant did not intend to be bound by the terms of
16 the agreements when made"); *see also Comerica Bank v. McDonald*, No. C -06-03735, 2006 WL
17 3365599, at *3-4 (N.D. Cal. Nov. 17, 2006) (dismissing promissory fraud claim for failure "to
18 allege with sufficient specificity" facts underlying claim).

19    Plaintiff concedes that Rule 9(b) applies to his promissory fraud claim, but argues that he
20 need only "identify the circumstances constituting fraud" to satisfy Rule 9(b). Pltf. Opp. at 15.
21 However, once again, Plaintiff misstates the applicable standard and cites to cases that did not
22 even involve claims of promissory fraud. *See id.* (citing *Moore v. Kayport Package Express,
23 Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *Semegen v. Weidner*, 788 F.2d 727, 731 (9th Cir. 1985)).
24 As explained in *Hsu*, a claim of promissory fraud focuses on the time at which the contract was
25 formed and can only satisfy Rule 9(b) if the plaintiff "point[s] to *facts* which show that defendant
26 harbored an intention not to be bound by terms of the contract at formation." *Hsu*, 211 F.R.D. at
27 620. Plaintiff cannot sustain a promissory fraud claim merely by pointing to Rudolph's alleged
28 nonperformance of the parties' agreement. *Magpali v. Farmers Group, Inc.*, 48 Cal. App. 4th

1  471, 481 (1996) (a "'plaintiff [that] adduces no further evidence of fraudulent intent than proof

2  of nonperformance . . . will never reach a jury.'") (quoting *Tenzer v. Superscope, Inc.*, 39 Cal. 3d

3  18, 30-31 (1985)).

4  **VII.   CONCLUSION**

5       For the reasons set forth herein and in Rudolph's opening memorandum, Plaintiff's

6  breach of contract, implied covenant, fiduciary duty, and promissory fraud claims should be

7  dismissed.

8  Dated: July 11, 2008                                WILSON SONSINI GOODRICH & ROSATI
                                                       Professional Corporation

                                                       By: /s/ Rodney G. Strickland, Jr.
                                                           Rodney G. Strickland, Jr.

                                                       Attorneys for Defendant
                                                       RUDOLPH TECHNOLOGIES, INC.