**E-Filed 1/21/09**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| MEHRDAD NIKOONAHAD,<br><br>           Plaintiff,<br><br>      v.<br><br>RUDOLPH TECHNOLOGIES, INC. and DOES 1-25, inclusive,<br><br>           Defendants. | Case Number C 08-2290 JF (PVT)<br><br>ORDER[1] GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND<br><br>[Re: docket no. 26] |

## I. BACKGROUND

Plaintiff Mehrdad Nikoonahad ("Nikoonahad") is an electronic engineer who holds several patents relating to semiconductor measurement and wafer inspection. Defendant Rudolph Technologies Inc. ("Rudolph") designs and produces equipment utilized by semiconductor device manufacturers. Rudolph is incorporated under the laws of Delaware and is headquartered in New Jersey.

On September 12, 2006, Nikoonahad and Rudolph entered into an exclusive patent

---

[1] This disposition is not designated for publication in the official reports.

licensing and assignment agreement ("the Agreement"). Pursuant to the Agreement, Rudolph agreed to pay Nikoonahad a fee of $100,000 in exchange for the "right and license to develop, test, manufacture, have manufactured for [Rudolph], use, sell, or offer for sale" the licensed technology "for a period of eighteen months from the effective date of [the] Agreement" ("Initial Development License"). Agmt. ¶ 2.1. During the designated eighteen-month period, Rudolph had the option to acquire the licensed technology for a fee of $600,000 ("First Option"). Agmt ¶ 3.1. If Rudolph decided not to exercise the First Option by the end of the eighteen-month period, the First Option and the Initial Development License would terminate. Agmt. ¶ 7.1. Additionally, the Agreement required Nikoonahad to disclose to Rudolph "all of his inventions that [were] reasonably related to the Licensed Subject Matter" and to file and inform Rudolph of provisional patent applications for any new inventions. Agmt. ¶ 4.2.1. Nikoonahad was obligated to grant Rudolph the option to add to the licensed subject matter any new inventions Nikoonahad created during the term of the Agreement ("Second Option"). Agmt. ¶ 4.2.3. Rudolph would then be able to purchase these inventions as part of the First Option. Agmt. ¶ 4.2.3.

The Agreement contained provisions for the payment of royalties and license fees in the event that the First and Second Options were exercised. Agmt. ¶¶ 5.2, 5.3. Nikoonahad agreed "to perform up to Five Hundred Twenty (520) hours of consulting services" at a specified rate. Agmt. ¶ 4.1.2. The Agreement also contained an integration clause, which stated that the written contract "contained the entire Agreement between the parties" and that all prior representations and agreements "ha[d] been merged into [the] document." Agmt. ¶ 17.1. The parties agreed that if a dispute relating to the contract arose that could not be settled through negotiation, they would attempt to settle the dispute through mediation before resorting to arbitration or litigation. Agmt. ¶ 20.1. The Agreement was to be construed according to the laws of New Jersey. Agmt. ¶ 19.1

On March 12, 2008, the eighteen-month term of the Agreement expired. At that time, Rudolph had not exercised either the First or Second Options or produced any royalty-bearing products. On March 21, 2008, Nikoonahad filed suit against Rudolph in the Santa Clara Superior Court, alleging claims for breach of written contract, breach of the implied covenant of

good faith and fair dealing, breach of fiduciary duty, and promissory fraud. On May 2, 2008, Rudolph removed the case to this Court based on diversity of citizenship and on May 9, 2008, moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). The Court granted Rudolph's motion on August 27, 2008 and dismissed all claims contained in the original complaint with leave to amend. On September 24, 2008, Nikoonahad filed his First Amended Complaint ("FAC"). On October 13, 2008, Rudolph filed the instant motion to dismiss the claims, again pursuant to Rule 12(b)(6) and 9(b).

## II. LEGAL STANDARD

A 12(b)(6) motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), but the Court need not accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). Thus, factual allegations must be enough to raise the right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Bell Atlantic Corp.* 127 S.Ct. at 1965. Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 ( 9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

Under Rule 9(b), claims of fraud are held to a higher pleading standard. Fed. R. Civ. P. 9(b). A "party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* "A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Vess v. Ciga-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

## III.  DISCUSSION

**A. Breach of Contract**

Under New Jersey law, "to establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract, and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super Ct. App. Div. 2007).  A breach of contract claim should be dismissed if a defendant's alleged acts or omissions do not breach any obligation owed to a plaintiff.  *See Paul Revere Life Insurance Co. V. Fink*, No. 07-CV-1648, 2007 WL 3430511, at *3 (D.N.J. Nov. 14, 2007).  Nikoonahad's FAC alleges that Rudolph breached the Agreement by (1) failing to develop royalty bearing products or consulting with Nikoonahad for the purpose of developing royalty-bearing products; (2) failing to engage with Nikoonahad in dispute resolution; and (3) using Nikoonahad's technology in its products without compensating Nikoonahad.  FAC ¶¶ 32-25.

**1. Failure to Develop Products and Consult with Nikoonahad**

The FAC alleges that paragraphs 2.1 and 4.1 of the Agreement obligated Rudolph to develop royalty-bearing products with Nikoonahad's technology and to consult with Nikoonahad for the purpose of developing these products. *See* FAC ¶¶ 21-22, 32-33; Pl.'s Opp. to Mot. to Dismiss at 1 ("Opp.").  However, no express provision in the contract *requires* Rudolph to develop royalty-bearing products or to utilize Plaintiff's consulting services for any particular topic.  The Initial Development License contained in paragraph 2.1 does not contain a promise by Rudolph to develop products; rather, it obligates Rudolph to pay the fee of $100,000 in exchange for the "right" and "license" to develop.[2]  Similarly, paragraphs 4.1.1 through 4.1.4 state only that Nikoonahad "agrees to provide up to Five Hundred Twenty (520) hours of consulting

---

[2] Agmt. ¶ 2.1: "Subject to the terms and conditions of this Agreement and in exchange for the fee set forth in paragraph 5.1.1 herein below, Licensor hereby grants to Licensee the exclusive, nontransferable, non sub-licensable right and license to develop, test, manufacture, have manufactured for License, use, sell, or offer for sale the Licensed Subject Matter (the "Development License") for a period of eighteen (18) months from the effective date of this Agreement."

services" on certain topics for a specified rate. Agmt. ¶¶ 4.1.1, 4.1.2. Because the Court cannot read terms into the Agreement, the FAC fails to state a claim for a breach of contract.

Nikoonahad argues that the Court must consider the prior discussions and negotiations between Nikoonahad and Rudolph to determine the parties' intent,[3] suggesting that it was "the parties' mutual understanding[] that Rudolph would develop products" using Nikoonahad's technology and consulting services once Rudolph accepted the development license. FAC ¶ 21; *see* Opp. at 5-6. According to Nikoonahad, "[t]he standard of interpretation of a contract is the meaning that would be ascribed to it by a reasonably intelligent person who was acquainted with all of the usages and circumstances surrounding the making of the writing." *Unihealth v. U.S. Healthcare, Inc.*, 14 F.Supp.2d 623 (D.N.J. 1998). However, parol evidence traditionally is excluded when it aims to "vary or contradict" the terms of an integrated contract. *See id.* Parol evidence may be used "only for the purpose of interpreting the writing–not for the purpose of *modifying or enlarging* or curtailing its terms, but to aid in determining the meaning of what has been said." *Atl. N. Airlines v. Schwimmer*, 12 N.J. 293, 302 (N.J. 1953) (emphasis added). In the instant action, Nikoonahad seeks to use parol evidence to insert a material obligation that is not integrated into the terms of the written Agreement. To allow this would change the essence of the contract and thus would constitute an impermissible use of parol evidence.

Finally, Nikoonahad argues that New Jersey law requires that the Court imply an obligation to develop products because the parties intended that Nikoonahad would accept reduced license and consulting fees in exchange for royalties on products developed by Rudolph. Nikoonahad asserts that in *Fenning v. American Type Founders, Inc.*, 33 N.J. Super. 167, (1954), the court held that the patent licensee was required to exploit the license, even though the

---

[3] Nikoonahad alleges that Rudolph represented through its agents that it was "eager to move forward together to produce multi-azimuth technology," FAC ¶ 13, and that Rudolph emailed Nikoonahad to report that he was looking forward to "making the multi-azimuth OCD technology a success in the marketplace!" FAC ¶ 14. Nikoonahad also alleges that Rudolph asked Nikoonahad in an email to participate in the economic risk associated with developing the anticipated products by reducing his consulting rate in exchange for royalty payments based on product sales.

contract did not contain an express provision spelling out the duty to do so: "if we presume the parties intended a fair contract where the evident purpose of the license was exploitation, an implied covenant of reasonable exploitation is essential." *Fenning*, 33 N.J. Super. at 176. Based on *Fenning*, Nikoonahad urges this Court to imply an obligation upon Rudolph to develop products under the license.

However, more recent cases interpreting *Fenning* under New Jersey law have refused to imply an obligation to market licensed technology where, as in the instant action, the licensor received an up-front licensing fee. *See Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 167 (3d. Cir. 2001) ("[A] substantial advance or minimum royalty payment serves to protect the licensor/ supplier from the possibility of the failure of the licensee/buyer to use reasonable or best efforts . . . In such instances, there is a mutuality of obligation and an implied obligation is unwarranted."). At least in the absence of specific facts similar to those present in *Fenning*, Nikoonahad has not sufficiently alleged an obligation by Rudolph to develop products or to utilize Nikoonahad's consulting services.

**2. Failure to Participate in Dispute Resolution**

Nikoonahad next claims that Rudolph refused to negotiate or mediate as required by paragraph 20 of the Agreement. FAC ¶ 34; Opp. at 10. The FAC alleges that in February of 2007, when it became apparent to Nikoonahad that Rudolph was not trying to develop products pursuant to the Agreement:

> Nikoonahad contacted Loiterman, [an agent of Rudolph] for the purpose of attempting to negotiate a resolution, but Loiterman failed and/or refused to engage with Nikoonahad to discuss or negotiate Nikoonahad's concerns. Thereafter, Nikoonahad notified Rudolph in writing there was a dispute and he requested that Rudolph engage with him in dispute resolution pursuant to the Agreement. Rudolph breached the Agreement by refusing to participate in the dispute resolution process . . .

FAC ¶ 34. Nikoonahad asserts that since Rudolph "refused to talk with [him, it] made it impossible for Nikoonihad to negotiate anything." Opp. at 10.

These allegations are insufficient to show that Mr. Loiterman's alleged failure to engage Nikoonahad in discussions in February 2007 constituted a breach of the dispute resolution provision. Nikoonahad does not allege that he notified Rudolph that he was invoking the dispute

6

Case No. C 08-2290 JF (PVT)
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFEX2)

resolution of the Agreement.  The Court also notes that paragraph 15 of the Agreement specifically identifies Rudolph's Vice President and General Counsel, Robert Koch, as the Rudolph employee to be noticed "as required or permitted" by the Agreement and points out that Nikoonahad has not alleged that he contacted Koch to discuss his concerns before filing the instant action.  *See* Agmt. ¶ 15.

### 3. Use of Nikoonahad's Technology without Compensation

Finally, Nikoonahad alleges in the alternative that Rudolph breached the Agreement by using Nikoonahad's technology in its current multi-angle OCD measurement products without compensating him.  FAC ¶ 35.   Because Nikoonahad does not provide any plausible factual basis for his belief that his technology is being used in Rudolph's products or identify which Rudolph products have utilized the technology,[4] the Court concludes that Nikoonahad has not pled sufficient facts that show that a breach of contract occurred.

**B. Breach of the implied covenant of good faith and fair dealing**

Under New Jersey law, the implied covenant mandates that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Emerson Radio Corp. V. Orion Sales, Inc.*, 253 F.3d 159, 170 (3rd Cir. 2001) (quoting *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997)).  New Jersey law recognizes three instances in which a party may assert an independent claim for breach of the implied covenant: "(1) when the contract does not provide a term necessary to fulfill the parties' expectations . . . (2) when bad faith served as a pretext for the exercise of a contractual right to terminate . . . [and] (3) when the contract expressly provides a party with discretion regarding its performance."  *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1078 (N.J. Super Ct. App. Div. 2002) (citations omitted).  The third instance may manifest "if the discretion-exercising party . . . unilaterally use[s] that authority in a way that intentionally subjects the other party to a risk beyond the normal business risks that the parties could have contemplated at the time of contract formation."  *Id.* (quoting *Wilson v. Amerada Hess Corp.*,

---

[4] Nikoonahad does not defend this claim in his Opposition to the Motion to Dismiss.

773 A.2d 1121 (N.J. 2001)). "Proof of 'bad motive or intention' is vital to an action for breach of the covenant." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., LLP*, 864 A.2D 387, 396 (N.J. 2005). A court should dismiss a plaintiff's claimed breach of the implied covenant if this claim is duplicative of a claimed breach of contract or where plaintiff cannot show the opposing party acted with "bad motive." *Cambridge Mgmt. Group, LLC v. Robert A. Kosseff & Assocs, P.C.*, No. 05-3402 JAP, 2007 WL 2084895, at *4–5 (D.N.J. July 18, 2007).

Nikoonahad alleges that Rudolph breached the implied covenant of good faith and fair dealing by: (1) exercising its control over Nikoonahad's technology to deprive him of the ability to license, sell, or otherwise commercialize its technology; (2) exercising control over the development of products in such a way as to ensure that no products requiring payment of royalties were developed before the expiration of the Agreement; and (3) retaining the subject intellectual property for its own benefit after terminating the contract. FAC ¶¶ 41-43. Nikoonahad asserts that Rudolph acted in bad faith because Rudolph's Director of Transparent Products, Greg Wolf, "had antipathy toward Nikoonahad that had been exhibited during [the] first consulting assignment a year earlier." FAC ¶ 44. On information and belief, Nikoonahad alleges that Wolf acted to suppress Rudolph's product development because of his ill will toward Nikoonahad, and that Rudolph knew of Wolf's ill will but nevertheless approved his actions. FAC ¶ 44.

These allegations are insufficient to state a claim for breach of the implied covenant under New Jersey. As discussed earlier, the Agreement obligates Rudolph only to pay an initial fee of $100,000 in exchange for the "right" and "license" to develop or sell Nikoonahad's technology. Rudolph's decision not to exercise the First or Second Option was discretionary. Nikoonahad does not allege facts sufficient to support a claim that Rudolph acted in bad faith or with an improper motive as opposed to exercising its discretion. Nikoonahad fails to assert any connection between the alleged antipathy of a Rudolph employee displayed on a single occasion in 2005 and Rudolph's decision not to exercise its options under the Agreement in 2007. Even under the liberal standard of Rule 12(b)(6), Nikoonahad's "ill will" claim is conclusory and thus

insufficient to state a claim for relief that is plausible on its face. *See Spreewell,* 266 F.3d at 988.

**C.  Breach of fiduciary duty**

Under New Jersey law, three elements comprise a claim for breach of fiduciary duty: (1) the defendant "is under a duty to act or give advice for the benefit of [the plaintiff] on matters within the scope of their relationship," (2) the defendant's conduct constitutes a breach of its "duty of loyalty and a duty to exercise reasonable skill and care," and (3) the plaintiff is harmed by defendant's breach. *F.G. v. MacDonell*, 696 A.2d 697, 703–04 (N.J. 1997).

In the FAC, Nikoonahad alleges that through its agents and attorneys, Rudolph assumed responsibility for prosecuting Nikoonahad's patent application – which was part of the intellectual property licensed under the Agreement – and that Nikoonahad executed a power of attorney to Rudolph with respect to the applications to the United States Patent office, the World Intellectual Property Organization pursuant to the Patent Corporation Treaty ("PCT Application"), and the Taiwanese patent office ("Taiwanese Patent Application"). FAC ¶ 48. Nikoonahad alleges in the FAC (as he did in the original complaint) that when Rudolph "took control over and responsibility for [the] intellectual property" and Nikoonahad executed the power of attorney, a fiduciary duty arose obligating Rudolph to prosecute the patent application, inform Nikoonahad of matters pertaining to prosecution of the application, and solicit Nikoonahad's expertise to secure issuance of the patent. FAC ¶ 49.  Nikoonahad alleges that Rudolph breached this duty by failing to communicate with him regarding matters and issues pertaining to the prosecution of the patent application, failing to solicit or utilize Nikoonahad's expertise in connection with prosecuting the patent, failing to notify Nikoonahad that the U.S. Patent and Trademark Office ("PTO") had rejected the patent application, and failing to prosecute Nikoonahad's PCT Application or to pay the filing and search fees, as a result of which that application was involuntarily withdrawn. *See* FAC ¶ 50.  Finally, Nikoonahad alleges that because of this breach, he lost his international patent rights, was deprived economic opportunity, and incurred costs associated with legal action required to address Rudolph's failures to pursue

9

Case No. C 08-2290 JF (PVT)
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFEX2)

his patent rights. Opp. at 15.[5]

In its order dated August 27, 2008, this Court dismissed the fiduciary duty claim, stating that "Nikoonahad has failed to plead any facts sufficient to establish *the existence of a fiduciary relationship*, a breach of a fiduciary duty, or resulting harm." Dismissal Order at 6 (emphasis added). Because Nikoonahad does not plead any additional facts to establish the existence of a fiduciary duty,[6] he again fails to allege a viable claim. Even if the Court were to find that a fiduciary duty existed between the parties, the FAC fails to make clear what harm, if any, resulted from the PTO's non-final rejection of the subject patent application or the involuntary withdrawal of the patent application from the PCT.

**D. Promissory fraud.**

A claim of "promissory fraud is not exempted from the strictures of Rule 9(b), and a plaintiff is required to plead 'facts from which the Court can infer that the allegedly fraudulent statements were actually false when made.'" *Hsu v. OZ Optics*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (citations omitted); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). "[A] plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract *at formation*." *Hsu*, 211 F.R.D. at 620 (emphasis added).

Nikoonahad alleges that Rudolph never intended to perform its obligations under the Agreement when the parties entered into the contract and that Rudolph entered into the Agreement to gain access to and control of Nikoonahad's technology and expertise. FAC ¶ 58. Nikoonahad alleges several representations in support of his theory that Rudolph never intended

---

[5] Rudolph notes that as a general matter, the FAC does not allege that Nikoonahad's patent applications would have resulted in issued patents at all, highlighting that in 2007, only half of the patent applications filed with the PTO resulted in issued patents. Rudolph's Mot. to Dismiss at 19.

[6] In the FAC, Nikoonahad adds that in addition to the power of attorney he executed with respect to the U.S. Application (alleged in the original complaint), that he also executed a power of attorney for the PCT Application and the Taiwanese Patent Application.

to perform under the Agreement, including representations that Rudolph's then-OCD technology was weak and that developing its OCD technology was of the highest priority for Rudolph (FAC ¶¶ 8, 57(a)), that Rudolph wanted to use Nikoonahad's technology to deploy new OCD technology by December 2007 (FAC ¶¶ 9, 11, 57(c)(d)), that Rudolph was eager to move forward with Nikoonahad to produce multi-azimuth technology (FAC ¶¶ 13, 57(e)), and that Nikoonahad's most significant payoff would result from reducing his consulting rate and license fees in exchange for royalty payments on subsequent product sales (FAC ¶¶ 15, 57(g)). Nikoonahad also alleges that Rudolph made a "promise contained in paragraph 2.1 of the Agreement" that Rudolph would use the license to develop, test, and manufacture the licensed subject matter.

As articulated above, the terms of the Agreement did not obligate Rudolph to develop royalty-bearing products, but rather obligated Rudolph to pay $100,000 in exchange for the right to develop and sell Nikoonahad's technology, which obligation Rudolph fully performed. Although Nikoonahad's complaint refers to several representations Rudolph made prior to signing the Agreement, none of these representations show that Rudolph did not intend to perform its contractual obligations at the time the parties entered into the Agreement. Nikoonahad must allege facts sufficient to show that Rudolph concealed ill-will or harbored an intent not to be bound by the Agreement at the time of formation.

### IV. ORDER

The motion to dismiss is GRANTED, with leave to amend. Any amended complaint shall be filed within thirty (30) days of the date of this order.

DATED:   January 21, 2009

JEREMY FOGEL
United States District Judge

Case No. C 08-2290 JF (PVT)
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFEX2)

1   This Order has been served upon the following persons:

3   John W. Clark    john@johnclarklaw.com

4   Keith E. Eggleton    keggleton@wsgr.com

5   Ardell Johnson    arjoh@pacbell.net

6   Rodney Grant Strickland , Jr    rstrickland@wsgr.com

7   Anthony J Weibell    aweibell@wsgr.com

Case No. C 08-2290 JF (PVT)
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFEX2)