1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 5/13/2009**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| MEHRDAD NIKOONAHAD, | Case Number C 08-2290 JF (PVT) |
| Plaintiff, | ORDER[1] GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |
| v. | |
| RUDOLPH TECHNOLOGIES, INC. and DOES 1-25, inclusive, | [Re: docket no. 45] |
| Defendants. | |

## I.  BACKGROUND

Plaintiff Mehrdad Nikoonahad ("Nikoonahad") is an electronic engineer who holds several patents relating to semiconductor measurement and wafer inspection.  Defendant Rudolph Technologies Inc. ("Rudolph") designs and produces equipment utilized by semiconductor device manufacturers.  Rudolph is incorporated under the laws of Delaware and is headquartered in New Jersey.

On September 12, 2006, Nikoonahad and Rudolph entered into an exclusive patent

---

[1] This disposition is not designated for publication in the official reports.

1   licensing and assignment agreement ("the Agreement").  Pursuant to the Agreement, Rudolph

2   agreed to pay Nikoonahad a fee of $100,000 in exchange for the "right and license to develop,

3   test, manufacture, have manufactured for [Rudolph], use, sell, or offer for sale" the licensed

4   technology "for a period of eighteen months from the affective date of [the] Agreement" ("Initial

5   Development License").  Agmt.  ¶ 2.1.  During the designated eighteen-month period, Rudolph

6   had the option to acquire the licensed technology for a fee of $600,000 ("First Option").  Agmt ¶

7   3.1.  If Rudolph decided not to exercise the First Option by the end of the eighteen-month period,

8   the First Option and the Initial Development License would terminate.  Agmt. ¶ 7.1.

9   Additionally, the Agreement required Nikoonahad to disclose to Rudolph "all of his inventions

10  that [were] reasonably related to the Licensed Subject Matter" and to file and inform Rudolph of

11  provisional patent applications for any new inventions.  Agmt. ¶ 4.2.1.  Nikoonahad was

12  obligated to grant Rudolph the option to add to the licensed subject matter any new inventions

13  Nikoonahad created during the term of the Agreement ("Second Option").  Agmt. ¶ 4.2.3.

14  Rudolph would then be able to purchase these inventions as part of the First Option.  Agmt. ¶

15  4.2.3.

16      The Agreement contained provisions for the payment of royalties and license fees in the

17  event that the First and Second Options were exercised.  Agmt. ¶¶ 5.2, 5.3.  Nikoonahad agreed

18  "to perform up to Five Hundred Twenty (520) hours of consulting services" at a specified rate.

19  Agmt. ¶ 4.1.2.  The Agreement also contained an integration clause, stating that the written

20  contract "contained the entire Agreement between the parties" and that all prior representations

21  and agreements "ha[d] been merged into [the] document."  Agmt. ¶ 17.1.  The parties agreed that

22  if a dispute relating to the contract arose that could not be settled through negotiation, they would

23  attempt to settle the dispute through mediation before resorting to arbitration or litigation.  Agmt.

24  ¶ 20.1.  The Agreement was to be construed according to the laws of New Jersey.  Agmt. ¶ 19.1

25      On March 12, 2008, the eighteen-month term of the Agreement expired.  At that time,

26  Rudolph had not exercised either the First or Second Options or produced any royalty-bearing

27  products.  On March 21, 2008, Nikoonahad filed suit against Rudolph in the Santa Clara

28  Superior Court, alleging claims for breach of written contract, breach of the implied covenant of

2

1  good faith and fair dealing, breach of fiduciary duty, and promissory fraud.  On May 2, 2008,

2  Rudolph removed the case to the this Court.  On May 9, 2008, Rudolph moved to dismiss

3  pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  On August 27, 2008, The Court

4  granted Rudolph's motion and dismissed all claims contained in Nikoonahad's complaint with

5  leave to amend.  On September 24, 2008, Nikoonahad filed a First Amended Complaint

6  ("FAC"), and on October 13, 2008, Rudolph again moved to dismiss.  On January 21, 2009, the

7  Court granted Rudolph's motion and dismissed all claims contained in the FAC with leave to

8  amend.  On February 6, 2009, Nikoonahad filed the operative Second Amended Complaint

9  ("SAC").  On March 3, 2009, Rudolph filed the instant motion to dismiss.

10  ## II.  MOTION TO DISMISS

11      A rule 12(b)(6) motion to dismiss should be granted if the plaintiff fails to proffer

12  "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

13  127 S. Ct. 1955, 1974 (2007).   Allegations of material fact must be taken as true and construed

14  in the light most favorable to the nonmoving party, *Jenkins v. McKeithen*, 395 U.S. 411, 421

15  (1969), but the Court need not accept as true allegations that are conclusory, legal conclusions,

16  unwarranted deductions of fact, or unreasonable inferences.  *See Sprewell v. Golden State*

17  *Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).   Thus, factual allegations must be enough to raise

18  the right to relief above the speculative level on the assumption that all of the complaint's

19  allegations are true.  *Bell Atlantic Corp.* 127 S.Ct. at 1965.

20      Under Rule 9(b), claims of fraud are held to a higher pleading standard.  Fed. R. Civ. P.

21  9(b).  A "party must state with particularity the circumstances constituting fraud or mistake.

22  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

23  *Id.*  "A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to

24  plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6)

25  for failure to state a claim." *Vess v. Ciga-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir.

26  2003).

27

28

Case No. C 08-2290 JF (PVT)_____
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
(JFEX1)

1

**III.  DISCUSSION**

2

**A. Breach of Contract**

3

Under New Jersey law, "to establish a breach of contract claim, a plaintiff has the burden

4

to show that the parties entered into a valid contract, that the defendant failed to perform his

5

obligations under the contract, and that the plaintiff sustained damages as a result." *Murphy v.*

6

*Implicito*, 920 A.2d 678, 689 (N.J. Super Ct. App. Div. 2007).  A breach of contract claim should

7

be dismissed if a defendant's alleged acts or omissions do not breach any obligation owed to a

8

plaintiff.  *See Paul Revere Life Insurance Co. V. Fink*, No. 07-CV-1648, 2007 WL 3430511, at

9

*3 (D.N.J. Nov. 14, 2007).  Nikoonahad's SAC alleges that Rudolph breached the Agreement by

10

(1) rejecting Nikoonahad's technology without evaluating it; (2) failing to use the eighteen-

11

months term of the development license to develop prototype, experiment and for customer

12

validation, take reasonable steps to prove out Nikoonahad's technology for the intended purpose

13

of offering for sale products based on the licensed technology; and to engage Nikoonahad to

14

provide consulting services, (3) retaining control of Nikoonahad's patent application after

15

effectively terminating the contract, (4) using Nikoonahad's technologies for the development or

16

sale of Rudolph products, (5) failing to use reasonable diligence to prosecute Nikoonahad's

17

pending patent applications and failing to prosecute Nikoonahad's patent applications to the

18

World Intellectual Property Organization and the Taiwanese patent office, (6) using

19

Nikoonahad's technology in Rudolph's products without compensating him, and (7) failing to

20

engage with Nikoonahad in dispute resolution,  SAC  ¶¶ 40-47.

21

**1.  Rejecting Nikoonahad's Technology Without Evaluating It**

22

Nikoonahad alleges that Rudolph breached the Agreement, including but not limited to

23

section 2.1, by rejecting Nikoonahad's technology without evaluating it.  SAC ¶ 40.  However,

24

Section 2.1 does not require Rudolph to evaluate the technology.  Instead, as the Court noted in

25

its previous dismissal order, "[paragraph 2.1] obligates Rudolph to pay the fee of $100,000 in

26

exchange for the 'right' and 'license' to develop" the technology.  Second Dismissal Order, Dtk.

27

40, at 4.  Nikoonahad points to the tasks itemized in sections 4.1.1.1, 4.1.1.2 and 4.1.1.4 of the

28

Agreement as support for his argument.  Pl.'s Opp. at 4:20-22.  The three sections identify tasks

4

1   as to which Nikoonahad agreed to provide consulting services, but they do not obligate Rudolph

2   to perform any tasks.  *See* Second Dismissal Order at 4-5 ("Similarly, paragraphs 4.1.1 through

3   4.1.4 state only that Nikoonahad 'agrees to provide up to Five Hundred Twenty (520) hours of

4   consulting services' on certain topics for a specific rate.").

5   **2.  Failure to Develop Products and Consult with Nikoonahad**

6          The SAC alleges that paragraphs 2.1 and 4.1 of the Agreement obligated Rudolph at least

7   attempt to develop royalty-bearing products with Nikoonahad's technology and to consult with

8   Nikoonahad for the purpose of developing these products.  *See* SAC ¶¶ 41-42; Pl.'s Opp. at 5,6.

9   In its second dismissal order, the Court found that "there is no express provision on the face of

10  the contract exists that *requires* Rudolph to develop royalty-bearing products or to utilize

11  [Nikoonahad's] consulting services for any particular topic."  Second Dismissal Order at 4-5

12  (emphasis original).  Nikoonahad still has not sufficiently alleged an obligation on the part of

13  Rudolph to attempt to develop products or to utilize Nikoonahad's consulting services.

14  **3.  Retaining Control of Nikoonahad's Patent Application**

15         The SAC alleges that "Rudolph breached the Agreement in that Rudolph retained control

16  of Nikoonahad's patent application after effectively terminating the contract on December 5,

17  2007."  SAC ¶ 43.  In its first dismissal order, the Court held that "Nikoonahad does not specify

18  what language of the Agreement gives rise to Rudolph's alleged breach with respect to its

19  retention of intellectual property after termination of the license."  First Dismissal Order at 4:10-

20  12.  Similarly, the SAC fails to specify the language of the Agreement that gives rise to

21  Rudolph's alleged breach with respect to its retention of intellectual property after termination of

22  the license.  In his opposition papers, Nikoonahad sets forth numerous facts purportedly

23  demonstrating that Rudolph retained control of his patent application, but he still does not point

24  to any language of the Agreement that supports his claim.

25  **4.  Use Nikoonahad's Technologies For the Development Or Sale of Rudolph
       Products**

26

27         Nikoonahad argues that "Section 6 of the Agreement incorporates a Confidentiality

28  Agreement which provides in pertinent part '[r]ecipient agrees . . . (c) not to apply, use, utilize,

1  incorporate, or in any way draw upon any Confidential Information for the development or sale

2  of any products or services or creation of any intellectual property . . . .'"  Pl.'s Opp. at 10:6-8.

3  However, the parties also expressly agreed that the courts of New Jersey would have exclusive

4  jurisdiction over any dispute regarding the Confidentiality Agreement.  Agmt. Ex. E ¶ 15(b)

5  ("Venue for any dispute arising under this [Confidentiality] Agreement shall be exclusively and

6  solely in the State of New Jersey, U.S.A.").  Accordingly, the Court lacks jurisdiction to

7  adjudicate this aspect of Nikoonahad's claim.

8  **5. Prosecuting Nikoonahad's Patent Applications**

9  The SAC alleges that Rudolph breached its collateral agreement to prosecute

10  Nikoonahad's patent application.  SAC ¶ 46.  Nikoonahad asserts that there was an oral

11  agreement that Rudolph would take responsibility for prosecuting the patents.  Pl.'s Opp. At 12.

12  Nikoonahad claims that the oral agreement was memorialized in three documents: a letter signed

13  by Rudolph's attorney accepting responsibility for the case, SAC Exh. H; a power of attorney

14  form signed by Nikoonahad, SAC Exh. I; and an email exchange, dated November 9, 2006,

15  between Chris McLaughlin and Nokoonahad regarding the patent application, Nikoonahad Decl.

16  Exh. C.  However, Nikoonahad fails to specify the material terms of this alleged oral contract.

17  **6. Use of Nikoonahad's Technology Without Compensation**

18  The SAC alleges that Rudolph breached the Agreement by using Nikoonahad's

19  technology in Rudolph's current products and using the technology for development of new

20  products without compensation.  SAC ¶ 47.  Nikoonahad argues that he has pled sufficient facts

21  to establish circumstantially that Rudolph indeed has used his technology.  Pl.'s Opp. at 14: 11-

22  12.  However, Nikoonahad does not specify the language in the Agreement that gives rise to his

23  claim.  Morever, he has failed to explain how a claim of using his technology without

24  compensation differs from his claim under Section 6 of the Agreement.[2]  Nikoonahad's claim

25

26  [2]Paragraph 47 of the SAC, which is the operative language for the claim of using

27  Nikoonahad's technology without compensation, states:

28  Plaintiff is informed and believes . . . that Rudolph breached the Agreement by

6

1  that Rudolph used his technology without compensation thus is governed by the venue provision

2  of the Confidentiality Agreement and must be dismissed.

3         **7.  Failure to Participate in Dispute Resolution**

4         Nikoonahad alleges that Rudolph refused to negotiate or mediate as paragraph 20 of the

5  Agreement required.  SAC ¶ 45; Pl.'s Opp. at 11-12.  Nikoonahad claims that the instant dispute

6  first arose when Rudolph tried to force Nikoonahad to accept a lower consulting rate in February

7  2007, and that he made numerous efforts to address the issue with Bob Loiterman but Loiterman

8  would not return his calls. Pl.'s Opp. at 11.  As the Court noted in its two previous dismissal

9  orders, "paragraph 15 of the Agreement specifically identifies Rudolph's Vice President and

10 General Counsel, Robert Koch, as the Rudolph employee to be noticed 'as required or permitted'

11 by the Agreement", Second Dismissal Order at 7:1-3, and that "Rudolph's duty to participate in

12 mediation to resolve disputes arising out of the Agreement does not mature unless a dispute

13 '[could] not be settled through negotiation.'" First Dismissal Order at 4:7-9.  Nikoonahad's letter

14 to Robert Koch on October 30, 2007 does not contain a request for negotiation and instead is a

15 demand for immediate mediation.  Accordingly, Nikoonahad's claim of failure to participate in

16 dispute resolution is insufficient.

17        **8.  Dispute Resolution**

18        Even if Nikoonahad had sufficiently pled the individual grounds for the breach of

19 _____

20       using Nikoonahad's technology in, or as part of, its current multi-angle OCD

21       measurement products . . . and/or by using said technology for the development of

22       new OCD measurement products without compensating Nikoonahad.

23 SAC ¶ 47. Paragraph 44 of the SAC, which is the operative language for the claim of
   breaching section 6 of the Agreement, states:

24

25       Rudolph breached the terms of the Agreement contained in section 6 in
         that Rudolph applied, used, incorporated, or drew upon said technologies

26       for the development or sale of Rudolph products the technology disclosed
         by Nikoonahad, i.e. technologies for optical critical dimension (OCD)

27       metrology . . . .

28 SAC ¶ 44.

1   contract claim discussed above, the claims cannot escape the dispute resolution provision of the

2   Agreement.  The dispute resolution provision required Nikoonahad first to negotiate with Robert

3   Koch regarding any dispute arising from the Agreement and then to participate in mediation.

4   Litigation becomes appropriate only after mediation has been unsuccessful.  Nikoonahad's letter

5   of October 30, 2007 did not contain a request for negotiation and instead was a demand for

6   mediation.  The breach of contract claims are thus unripe and will be dismissed.

7   **B. Breach of the implied covenant of good faith and fair dealing**

8           Under New Jersey law, the implied covenant of good faith and fair dealing mandates that

9   "neither party shall do anything which will have the effect of destroying or injuring the right of

10  the other party to receive the fruits of the contract." *Emerson Radio Corp. V. Orion Sales, Inc.*,

11  253 F.3d 159, 170 (3rd Cir. 2001) (quoting *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575,

12  587 (N.J. 1997)).  New Jersey law recognizes three instances in which a party may assert an

13  independent claim for breach of the implied covenant: "(1) when the contract does not provide a

14  term necessary to fulfill the parties' expectations . . . (2) when bad faith served as a pretext for

15  the exercise of a contractual right to terminate . . . [and] (3) when the contract expressly provides

16  a party with discretion regarding its performance." *Seidenberg v. Summit Bank*, 791 A.2d 1068,

17  1078 (N.J. Super Ct. App. Div. 2002) (citations omitted).  The third instance may manifest "if the

18  discretion-exercising party . . . unilaterally use[s] that authority in a way that intentionally

19  subjects the other party to a risk beyond the normal business risks that the parties could have

20  contemplated at the time of contract formation." *Id.* (quoting *Wilson v. Amerada Hess Corp.*,

21  773 A.2d 1121 (N.J. 2001)).  "Proof of 'bad motive or intention' is vital to an action for breach

22  of the covenant." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., LLP*,

23  864 A.2D 387, 396 (N.J. 2005).

24          Nikoonahad alleges that Rudolph breached the implied covenant of good faith and fair

25  dealing by: (1) exercising its control over Nikoonahad's technology to deprive him of the ability

26  to license, sell, or otherwise commercialize its technology; (2) exercising control over the

27  development of products in such a way as to ensure that no products requiring payment of

28  royalties were developed before the expiration of the Agreement; and (3) retaining the subject

8

1    intellectual property for its own benefit after terminating the contract.  SAC ¶¶ 53-55.

2    Nikoonahad claims that Greg Wolf, Rudolph's Director of Transparent Products, upon whom

3    Rudolph relied to make decisions regarding the OCD product development effort, had antipathy

4    toward Nikoonahad.  SAC ¶ 57.  Nikoonahad argues that Greg Wolf's personal conflict with

5    Nikoonahad along with the conducts of Rudolph through out the contractual relationship are

6    sufficient to support a claim of bad faith.[3]  Pl.'s Opp. at 15:22-24.  Viewing the allegations in the

7    SAC as true, the Court concludes that Nikoonahad has sufficiently pled a claim for breach of the

8    implied covenant of good faith and fair dealing.

9    **C. Fraud.**

10        "Under California law, parol evidence cannot be introduced to show fraud or

11   misrepresentation if the parol evidence contradicts the language of an integrated contract: '[i]f

12   the false promise relates to the matter covered by the main agreement and contradicts or varies

13   the terms thereof, any evidence of the false promise directly violates the parol evidence rule and

14   is inadmissible.'"  *Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272,

15   281 (9th Cir. 1992) (citing *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465 (1989)).

16        Nikoonahad contends that the parol evidence shows the intent of the parties to develop

17   the technology and establishes that Rudolph had no intention of performing at the time it entered

18   into the Agreement but instead sought Nikoonahad's technology for its own use without

19   performing according to the terms of the Agreement.  Pl.'s Opp. at 16-17.  However, the terms of

20   the Agreement did not obligate Rudolph to develop royalty-bearing products or engage

21   Nikoonahad for his consulting services, but rather obligated Rudolph to pay $100,000 in

22   exchange for the right to develop and sell Nikoonahad's technology, which Rudolph did.  The

23

24   _____

25        [3]Nikoonahad alleges specifically that Rudolph: never was timely in its payments to
     Nikoonahad; tried surreptitiously to get Nikoonahad to assign the patent without exercising the
26   option to purchase it; abandoned the European and Taiwan applications without informing
     Nikoonahad; did not tried to involve Nikoonahad in the application pending before the USPTO
27   and concealed the USPTO's rejection from Nikoonahad; and represented to Nikoonahad that it
     was "eager to move forward together" but after obtaining control Rudolph stonewalled repeated
28   requests from Nikoonahad for information regarding the project.

Case No. C 08-2290 JF (PVT)_____
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
(JFEX1)

1 parol evidence that Nikoonahad that seeks to admit contradicts the language of the Agreement

2 and therefore is barred by the integration clause.  Accordingly, the fraud claim will be dismissed.

3 **D.  Leave To Amend**

4 Fed.R.Civ.P. 15(a)(2) provides that leave to amend "shall be freely given when justice

5 so requires."  "The decision of whether to grant leave to amend nevertheless remains within the

6 discretion of the district court, which may deny leave to amend due to ". . . repeated failure to

7 cure deficiencies by amendments previously allowed . . . [and] futility of amendment.'"

8 *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*,

9 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).  As discussed above, Nikoonahad's

10 breach of contract claims cannot escape the dispute resolution provision of the agreement.  The

11 Court also notes that the SAC is Nikoonhad's third attempt at pleading the breach of contract and

12 fraud claims, and that the claims are insufficient despite detailed guidance from the Court in its

13 previous orders.  Accordingly, the breach of contract and fraud claims will be dismissed without

14 leave to amend.

15 ## IV.  ORDER

16 For the reasons set forth herein, the motion to dismiss is DENIED with respect to the

17 claim for breach of implied convenant of good faith and fair dealing, and GRANTED with

18 without leave to amend with respect to the claims for breach of contract and fraud.  Defendants

19 shall file their answer within twenty (20) days of the date this order is filed.

21 **IT IS SO ORDERED.**

22 DATED: 5/12/2009

25 _____
JEREMY FOGEL
United States District Judge

Case No. C 08-2290 JF (PVT)_____
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
(JFEX1)

1    This Order has been served upon the following persons:

2    Anthony J Weibell      aweibell@wsgr.com, vshreve@wsgr.com

3    Ardell Johnson     arjoh@pacbell.net

4    John W. Clark     john@johnclarklaw.com

5    Keith E. Eggleton     keggleton@wsgr.com

6    Rodney Grant Strickland , Jr     rstrickland@wsgr.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11