KEITH E. EGGLETON, State Bar No. 159842
RODNEY G. STRICKLAND, JR., State Bar No. 161934
ANTHONY J WEIBELL, State Bar No. 238850
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: keggleton@wsgr.com;
rstrickland@wsgr.com; aweibell@wsgr.com

Attorneys for Defendant
RUDOLPH TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEHRDAD NIKOONAHAD,<br><br>  Plaintiff,<br><br>  v.<br><br>RUDOLPH TECHNOLOGIES, INC. and DOES 1-25, inclusive,<br><br>  Defendants. | CASE NO.: C 08-2290 JF (PVT)<br><br>**RUDOLPH TECHNOLOGIES, INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND COUNTERCLAIMS** |

Defendant Rudolph Technologies, Inc. ("Rudolph") answers each numbered paragraph of the Second Amended Complaint ("SAC") of plaintiff Mehrdad Nikoonahad ("Nikoonahad"), on personal knowledge as to its own activities and on information and belief as to the activities of others, as follows:

**PARTIES**

1. Rudolph admits the allegations of Paragraph 1.

2. Rudolph admits the allegations of Paragraph 2.

**JURISDICTION**

3. Rudolph admits the allegations of Paragraph 3.

**PARTIES' RELATIONSHIP**

4. Rudolph admits that in 2006, Nikoonahad was listed as the owner of U.S. Patent No. 6,867,862, U.S. Patent Application No. 60/641,979, and International PCT Publication No. WO 2004/046655 A3, and that the intellectual property described therein relates to techniques for making measurements of fine structures on silicon wafers during semiconductor device manufacturing, using a technique referred to as Optical Critical Dimension (OCD) measurement, Optical CD measurement or Scatterometry. Rudolph lacks knowledge and information sufficient to form a belief about the truth of the remaining express and implied allegations of this paragraph and on that basis denies such allegations.

5. Rudolph admits that it designs, develops, manufacturers and supports high-performance, process-control equipment used in semiconductor device manufacturing, and that it does business worldwide. Rudolph denies the remaining express and implied allegations of this paragraph.

6. Rudolph admits the allegations of Paragraph 6.

7. Rudolph admits that while consulting for Rudolph in 2005, Nikoonahad proposed existing technologies for Rudolph to consider, that Nikoonahad's consulting arrangement with Rudolph concluded in April 2005, and that Nikoonahad informed Rudolph he would be continuing to perfect the technologies he claimed to have developed and that Rudolph should contact him if and when it wanted to use those technologies. Rudolph lacks knowledge and

1  information sufficient to form a belief about the truth of the remaining express and implied
2  allegations of this paragraph and on that basis denies such allegations.

3    8.    Rudolph admits that in 2006 Rudolph expressed interest in technology
4  purportedly owned by Nikoonahad, that in May 2006 Rudolph entered into a second consulting
5  agreement with Nikoonahad for a three-month term pursuant to which Rudolph would consult
6  Nikoonahad regarding OCD applications and marketing activities related to new Rudolph
7  products, that during the course of this second consulting engagement Rudolph expressed
8  interest in acquiring and using Nikoonahad's purported technology, that in 2004 Rudolph had
9  been working with third parties to develop a critical dimension measurement product to adapt
10 Rudolph's existing film measurement products to perform OCD measurement, that Chris Morath
11 participated in oral conversations with Nikoonahad in 2006, and that development of OCD
12 technology was a high priority for Rudolph in 2006.  Rudolph lacks knowledge and information
13 sufficient to form a belief about the truth of the remaining express and implied allegations of this
14 paragraph and on that basis denies such allegations.

15   9.    Rudolph admits that Chris Morath participated in oral conversations with
16 Nikoonahad in 2006 and that development of OCD technology was a high priority for Rudolph
17 in 2006.  Rudolph lacks knowledge and information sufficient to form a belief about the truth of
18 the remaining express and implied allegations of this paragraph and on that basis denies such
19 allegations.

20   10.   Rudolph admits that as of June 28, 2006 Nikoonahad entered into a Non-
21 Disclosure Agreement (NDA) with Rudolph that speaks for itself.  Rudolph lacks knowledge and
22 information sufficient to form a belief about the truth of the remaining express and implied
23 allegations of this paragraph and on that basis denies such allegations.

24   11.   Rudolph admits that Chris Morath participated in oral conversations with
25 Nikoonahad in 2006 and that development of OCD technology was a high priority for Rudolph
26 in 2006.  Rudolph lacks knowledge and information sufficient to form a belief about the truth of
27 the remaining express and implied allegations of this paragraph and on that basis denies such
28 allegations.

1       12.     Rudolph lacks knowledge and information sufficient to form a belief about the truth of the express and implied allegations of Paragraph 12 and on that basis denies these allegations.

        13.     Rudolph admits that it presented a term sheet to Nikoonahad proposing to acquire his IP by assignment, and that Rudolph attached the term sheet to an e-mail from Chris Morath to Nikoonahad which speaks for itself as to its contents.  Rudolph denies that in said term sheet Rudolph proposed to license Nikoonahad's IP.  Rudolph denies the remaining implied allegations of this paragraph.

        14.     Rudolph admits that Morath sent an email to Nikoonahad that speaks for itself as to its contents.  Rudolph denies the remaining express and implied allegations of this paragraph.

        15.     Rudolph admits that Morath sent an email to Nikoonahad that speaks for itself as to its contents.  Rudolph denies the remaining express and implied allegations of this paragraph.

        16.     Rudolph lacks knowledge and information sufficient to form a belief about the truth of the express and implied allegations of Paragraph 16 and on that basis denies such allegations.

        17.     Rudolph admits that Nikoonahad stated that "I am willing to share the risks with you and, as such, $100K upfront fee is fine. I have made the decision to work with you exclusively."  Rudolph further admits that Morath sent an email to Nikoonahad that speaks for itself as to its contents.  Rudolph denies the remaining express and implied allegations of this paragraph.

        18.     Rudolph admits that Morath sent an email to Nikoonahad that speaks for itself as to its contents.  Rudolph lacks knowledge and information sufficient to form a belief about the truth of the remaining express and implied allegations of this paragraph and on that basis denies such allegations.

        19.     Rudolph admits that on or about September 12, 2006 Nikoonahad entered into a written contract with Rudolph entitled "Exclusive Patent License and Assignment Agreement" (hereafter the "Agreement") and that a copy of the Agreement is attached as Exhibit F to the

Second Amended Complaint. Rudolph denies the remaining express and implied allegations of this paragraph.

20. Rudolph denies the express and implied allegations of Paragraph 20.

21. Rudolph lacks knowledge and information sufficient to form a belief about the truth of the express and implied allegations of Paragraph 21 and on that basis denies such allegations.

22. Rudolph denies the express and implied allegations of Paragraph 22 and avers that the Agreement speaks for itself.

23. Rudolph admits that Rudolph did not have access to all of Nikoonahad's intellectual property before Nikoonahad and Rudolph signed the Agreement, and avers that the Agreement speaks for itself. Rudolph denies the remaining express and implied allegations of this paragraph.

24. Rudolph avers that the Agreement speaks for itself. Rudolph denies the remaining express and implied allegations of this paragraph.

25. Rudolph avers that the Agreement speaks for itself. Rudolph denies the remaining express and implied allegations of this paragraph.

26. Rudolph admits that it reviewed and evaluated Nikoonahad's technology after entering into the contract, and that Morath sent an email to Nikoonahad that speaks for itself as to its contents. Rudolph denies the remaining express and implied allegations of this paragraph.

27. Rudolph admits the allegations of Paragraph 27.

28. Rudolph admits that Nikoonahad signed a power of attorney with respect to his patent applications to the United States Patent office and the international application to the World Intellectual Property Organization pursuant to the Patent Cooperation Treaty, and a separate power of attorney with respect to the patent application to the Taiwanese patent office; and that a copy of the power of attorney Nikoonahad signed on December 21, 2006 is attached as Exhibit I to the second amended complaint. Rudolph denies the remaining express and implied allegations of this paragraph.

29. Rudolph denies the express and implied allegations of Paragraph 29.

30. Rudolph admits that by letter dated October 30, 2007, a copy of which is attached as Exhibit J to the second amended complaint, Nikoonahad contacted Rudolph, through its counsel Robert A. Koch, and "demanded" mediation. Rudolph denies the remaining express and implied allegations of this paragraph.

31. Rudolph avers that the documents identified in the subparagraphs of Paragraph 31 speak for themselves. Rudolph admits that in February 2007, Rudolph proposed a Statement of Work that would guarantee Nikoonahad a minimum of 80 hours of consulting work per month at the rate of $175 per hour. Rudolph denies the remaining express and implied allegations of Paragraph 31 and of each subparagraph thereof.

## ANSWER TO FIRST CLAIM FOR RELIEF

### (Breach of Contract)

32. Rudolph incorporates by reference its response to Paragraphs 1 through 31.

33. Rudolph admits that Nikoonahad disclosed to Rudolph technical information, and that Nikoonahad made himself available to Rudolph for consulting with Rudolph regarding the development of product using the licensed technology and the other subject matters about which he agreed to consult in the Agreement. Rudolph denies the remaining express and implied allegations of this paragraph.

34. Rudolph admits that on or about September 25, 2006 at the request of Chris McLaughlin, Nikoonahad provided Rudolph with copies of a patent application that Nikoonahad claimed to have filed nearly a year earlier. Rudolph denies the remaining express and implied allegations of this paragraph.

35. Rudolph admits that Nikoonahad prepared a proposal for an offshore development team which would be based in Armenia, and that Nikoonahad submitted his report and was paid for his work. Rudolph denies the remaining express and implied allegations of this paragraph.

36. Rudolph admits the allegations of Paragraph 36.

37. Rudolph admits that Nikoonahad performed some preliminary calculations at the request of Rudolph and was paid for his work. Rudolph denies the remaining express and implied allegations of this paragraph.

1   38. Rudolph admits that Nikoonahad gave power of attorney to Harrington & Smith, LLP.  Rudolph denies the remaining express and implied allegations of this paragraph.

39. Rudolph admits the allegations of Paragraph 39.

40. Rudolph avers that no response to this paragraph is necessary because Plaintiff's breach of contract claim has been dismissed with prejudice, but nevertheless denies the express and implied allegations of Paragraph 40.

41. Rudolph avers that no response to this paragraph is necessary because Plaintiff's breach of contract claim has been dismissed with prejudice, but nevertheless denies the express and implied allegations of Paragraph 41.

42. Rudolph avers that no response to this paragraph is necessary because Plaintiff's breach of contract claim has been dismissed with prejudice, but nevertheless denies the express and implied allegations of Paragraph 42.

43. Rudolph avers that no response to this paragraph is necessary because Plaintiff's breach of contract claim has been dismissed with prejudice, but nevertheless denies the express and implied allegations of Paragraph 43.

44. Rudolph avers that no response to this paragraph is necessary because Plaintiff's breach of contract claim has been dismissed with prejudice, but nevertheless denies the express and implied allegations of Paragraph 44.

45. Rudolph avers that no response to this paragraph is necessary because Plaintiff's breach of contract claim has been dismissed with prejudice, but nevertheless denies the express and implied allegations of Paragraph 45.

46. Rudolph avers that no response to this paragraph is necessary because Plaintiff's breach of contract claim has been dismissed with prejudice, but nevertheless denies the express and implied allegations of Paragraph 46.

47. Rudolph avers that no response to this paragraph is necessary because Plaintiff's breach of contract claim has been dismissed with prejudice, but nevertheless denies the express and implied allegations of Paragraph 47.

48. Rudolph avers that no response to this paragraph is necessary because Plaintiff's breach of contract claim has been dismissed with prejudice, but nevertheless denies the express and implied allegations of Paragraph 48.

### ANSWER TO SECOND CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

49. Rudolph incorporates by reference its response to Paragraphs 1 through 48.

50. Rudolph denies the express and implied allegations of Paragraph 50.

51. Rudolph avers that the Agreement speaks for itself and denies the remaining express and implied allegations of this paragraph.

52. Rudolph denies the express and implied allegations of Paragraph 52.

53. Rudolph denies the express and implied allegations of Paragraph 53.

54. Rudolph denies the express and implied allegations of Paragraph 54.

55. Rudolph denies the express and implied allegations of Paragraph 55.

56. Rudolph lacks knowledge and information sufficient to form a belief about the truth of the express and implied allegations of Paragraph 56 and on that basis denies such allegations.

57. Rudolph denies the express and implied allegations of Paragraph 57.

58. Rudolph denies the express and implied allegations of Paragraph 58.

59. Rudolph denies the express and implied allegations of Paragraph 59.

60. Rudolph denies the express and implied allegations of Paragraph 60.

### ANSWER TO THIRD CLAIM FOR RELIEF

### (Fraud)

61. Rudolph incorporates by reference its response to Paragraphs 1 through 60.

62. Paragraph 62 contains no allegations to be admitted or denied because it relates solely to a claim that has been dismissed by the Court with prejudice, but Rudolph nevertheless denies the express and implied allegations of this paragraph.

63. Paragraph 63 contains no allegations to be admitted or denied because it relates solely to a claim that has been dismissed by the Court with prejudice, but Rudolph nevertheless denies the express and implied allegations of this paragraph.

64. Paragraph 64 contains no allegations to be admitted or denied because it relates solely to a claim that has been dismissed by the Court with prejudice, but Rudolph nevertheless denies the express and implied allegations of this paragraph.

65. Paragraph 65 contains no allegations to be admitted or denied because it relates solely to a claim that has been dismissed by the Court with prejudice, but Rudolph nevertheless denies the express and implied allegations of this paragraph.

66. Paragraph 66 contains no allegations to be admitted or denied because it relates solely to a claim that has been dismissed by the Court with prejudice, but Rudolph nevertheless denies the express and implied allegations of this paragraph.

67. Paragraph 67 contains no allegations to be admitted or denied because it relates solely to a claim that has been dismissed by the Court with prejudice, but Rudolph nevertheless denies the express and implied allegations of this paragraph.

## **AFFIRMATIVE DEFENSES**

### **FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Claim for Relief)**

68. The SAC fails to state facts sufficient to constitute a claim for relief for any of the claims alleged, or for any other claim for relief.

### **SECOND AFFIRMATIVE DEFENSE**

**(Ripeness)**

69. The surviving cause of action alleged in the SAC is not ripe for adjudication because Plaintiff failed to satisfy certain conditions precedent in the Agreement, including the dispute resolution procedure.

### THIRD AFFIRMATIVE DEFENSE

### (Failure to Perform)

70. Plaintiff is not entitled to recover for any alleged breach of obligations by Rudolph because Plaintiff has failed to perform his obligations to Rudolph.

### FOURTH AFFIRMATIVE DEFENSE

### (Inconsistent With Written Contract)

71. The allegations in the SAC allege obligations imposed by the implied covenant of good faith and fair dealing that are inconsistent with the parties' written integrated contract.

### FIFTH AFFIRMATIVE DEFENSE

### (Estoppel)

72. The SAC, and each cause of action asserted therein, is barred by the doctrine of estoppel by reason of Plaintiff's conduct, actions, omissions and/or communications.

### SIXTH AFFIRMATIVE DEFENSE

### (Waiver)

73. The SAC, and each cause of action asserted therein, is barred by the doctrine of waiver by reason of Plaintiff's conduct, actions, omissions and/or communications.

### SEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

74. On information and belief, the SAC, and each cause of action asserted therein, is barred by the doctrine of unclean hands due to Plaintiff's conduct, actions, omissions and/or communications.

### EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

75. Plaintiff has failed to mitigate or attempt to mitigate damages, if in fact any damages have been or will be sustained, and any recovery by Plaintiff must be diminished or barred by reason thereof.

## NINTH AFFIRMATIVE DEFENSE

76. Rudolph reserves all defenses under the Federal Rules of Civil Procedure, the Patent Laws of the United States, the laws of the State of New Jersey, the laws of the State of California, and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

## **COUNTERCLAIMS**

Counterclaimant Rudolph hereby alleges for its Counterclaims against counterclaim-defendant Nikoonahad, on personal knowledge as to its own activities and on information and belief as to the activities of others, as follows:

## THE PARTIES

77. Counterclaimant Rudolph is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in New Jersey.

78. According to his Second Amended Complaint, counterclaim-defendant Nikoonahad is an individual resident of California.

## JURISDICTION AND VENUE

79. This court has jurisdiction under 28 U.S.C. § 1332, which grants the District Courts original jurisdiction in cases involving parties of diverse citizenship. At the time of filing this action, Nikoonahad was and still is a citizen of the State of California and not a citizen of Delaware or New Jersey. At the time of filing this action, Rudolph was and still is a citizen of Delaware and New Jersey, due to its incorporation in Delaware and due to the location of its headquarters and principal place of business in New Jersey. Rudolph is not, and was not at the time of filing this action, a citizen of California, the state in which this action is pending. The amount in controversy exceeds the $75,000 statutory minimum for diversity jurisdiction.

80. Personal jurisdiction and venue in this district is proper because Nikoonahad resides within the jurisdiction of this district, and under 28 U.S.C. § 1441 because this District includes the California Superior Court for Santa Clara County, the forum in which this action was originally filed prior to removal to federal court.

## FIRST COUNTERCLAIM

### (Breach of Contract)

81. Rudolph incorporates by reference the allegations of paragraphs 77-80.

82. On September 12, 2006, Nikoonahad and Rudolph entered into a valid and binding contract pursuant to which Rudolph paid Nikoonahad $100,000 for a license to intellectual property purportedly owned by Nikoonahad and for an option to acquire that intellectual property during the term of the Agreement for an additional $600,000 ("the Agreement").

83. In the Agreement, Nikoonahad agreed that if any dispute between the parties arose out of or related to the Agreement, he would first seek to resolve the dispute by notifying Rudolph's general counsel, Robert Koch, of the dispute and by attempting to negotiate a resolution to the dispute with Rudolph before demanding mediation or arbitration or litigating the dispute.

84. The Agreement also provided a 90-day period during which a party had the right to correct any material breach after receiving written notice of the breach.

85. Rudolph performed its obligations under the Agreement by paying Nikoonahad all consideration owed to him under the Agreement and by attempting to negotiate with Nikoonahad when Nikoonahad claimed that a dispute had arisen between the parties.

86. Nikoonahad breached the Agreement by sending a letter on October 30, 2007 demanding mediation of a purported dispute between the parties without first attempting to negotiate with Rudolph's general counsel, Robert Koch, to resolve the alleged dispute. As the Court held in its order issued May 13, 2009 dismissing Nikoonahad's breach of contract claims: "Nikoonahad's letter of October 30, 2007 did not contain a request for negotiation and instead was a demand for mediation. [Nikoonahad's] breach of contract claims are thus unripe and will be dismissed."

87. Nikoonahad also breached the Agreement by refusing to allow Rudolph to exercise its contractual right to cure any deficiencies alleged by Nikoonahad. Specifically, in a letter dated November 9, 2007, Rudolph asked Nikoonahad that "in the event that Dr. Nikoonahad believes that Rudolph has breached its obligations under the Agreement, please so inform the company of

the applicable provision within the Agreement and the specific facts surrounding such allegation in order that Rudolph be afforded the ninety (90) days to correct such breach per paragraph 7.4." Nikoonahad responded with a letter dated November 16, 2007, stating that "there is no point" to giving Rudolph an opportunity to cure because "such a demand would be futile."

88. Nikoonahad further breached the Agreement by filing the present lawsuit without satisfying the conditions precedent imposed by the dispute resolution provision of the Agreement.

89. Rudolph has been injured and has suffered damages as a result of Nikoonahad's breach of the Agreement, including but not limited to damages relating to Rudolph's costs and attorneys' fees in defending itself in this litigation.

## SECOND COUNTERCLAIM

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

90. Rudolph incorporates by reference the allegations of paragraphs 77-89.

91. The Agreement contained an implied covenant of good faith and fair dealing that obligated Nikoonahad to avoid doing anything that would have the effect of destroying or injuring the right of Rudolph to receive the benefits of the Agreement.

92. One of the benefits of the Agreement was Nikoonahad's promise that if any dispute between the parties arose out of or related to the Agreement, he would first seek to resolve the dispute by notifying Rudolph's general counsel, Robert Koch, of the dispute and by attempting to negotiate a resolution to the dispute before demanding mediation or arbitration or litigating the dispute. The purpose of this contractual provision was to protect the parties from being forced to incur large litigation expenses where a dispute could be settled by good faith negotiations or mediation.

93. Another benefit of the Agreement was Rudolph's right to cure any alleged deficiency in its performance of its contractual obligations within 90 days of being notified of a deficiency.

94. Nikoonahad developed ill will for Rudolph when Rudolph refused to employ Nikoonahad for as many consulting hours as Nikoonahad had hoped to be employed during the term of the Agreement. During the term of the Agreement, Nikoonahad threatened to terminate

1  the Agreement and take his technology elsewhere if he was not going to be utilized more by
2  Rudolph.

3   95.   Nikoonahad developed further ill will for Rudolph when he learned that Rudolph
4  was not developing products using his technology and, therefore, that he would not receive any
5  royalties from Rudolph. Nikoonahad claimed that because Rudolph had been given access to
6  Nikoonahad's technology but decided not to develop royalty-bearing products, Nikoonahad's
7  technology had been "rendered valueless."

8   96.   Nikoonahad developed further ill will for Rudolph when he learned that Rudolph
9  was not going to purchase the technology licensed under the Agreement for an additional
10 $600,000.

11   97.   Because of the ill will Nikoonahad developed for Rudolph, Nikoonahad acted in
12 bad faith to cause financial harm to Rudolph, to extract additional money from Rudolph to which
13 he was not contractually entitled, and to deprive Rudolph of its rights under the Agreement.

14   98.   Because of the ill will he developed toward Rudolph, Nikoonahad asserted a
15 purported dispute relating to the Agreement, intentionally refused to negotiate in good faith with
16 Rudolph to resolve the purported dispute, and intentionally refused to allow Rudolph the
17 opportunity to correct the alleged deficiencies within 90-day cure period provided in the
18 Agreement.

19   99.   Also because of the ill will Nikoonahad developed for Rudolph, Nikoonahad
20 further acted to deprive Rudolph of its rights under the Agreement by filing a lawsuit against
21 Rudolph without first fulfilling his dispute resolution obligations and with the intent to cause
22 Rudolph to suffer damages in the form of legal expenses and to extract a settlement out of
23 Rudolph.

24   100.  In engaging in the above-described acts in bad faith, Nikoonahad breached the
25 implied covenant of good faith and fair dealing to which Rudolph was entitled under the
26 Agreement.

27
28

RUDOLPH'S ANSWER TO SAC
CASE NO. C 08-2290 JF (PVT)                    -13-                         3681894_6.DOC

101. As a result of Nikoonahad's breach of the implied covenant of good faith and fair dealing, Rudolph has been injured and has suffered damages, including but not limited to damages relating to Rudolph's costs and attorneys' fees in defending itself in this litigation.

## **PRAYER FOR RELIEF**

WHEREFORE, Rudolph requests:

(a) That Nikoonahad take nothing by way of his Second Amended Complaint;

(b) That judgment be entered in favor of Rudolph and against Nikoonahad, and that Nikoonahad's action be dismissed in its entirety with prejudice;

(c) That Rudolph be awarded actual damages, including the costs incurred to defend itself in this litigation, plus interest at the legal rate; and

(d) For other such relief as the Court shall deem just and proper.

Dated: June 1, 2009

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  /s/ Rodney G. Strickland, Jr.
     Rodney G. Strickland, Jr.

Attorneys for Defendant
RUDOLPH TECHNOLOGIES, INC.